# CASES

IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

## Miller *versus* Phillips *et al.*

If a contractor stipulate to build and finish a house by a certain day, and, at the expiration of the time, he has not commenced the work, the other party may rescind the contract.

If there be no performance within the time, the contract may be rescinded. If there be substantial performance, with only minor deficiencies, it may not be. But a defective, negligent, and worthless performance, is the same as no performance at all.

Where a contractor has performed his contract within the time stipulated, in such a defective and negligent manner, that his work is of no value to the other party, who, thereupon, gives him notice of rescission; he cannot afterwards, by a subsequent attempt to perform the original contract, render the other party liable to pay for the work performed under such circumstances.

A party is not bound to pay for an erection on his land, in every way radically defective, in view of the purpose for which it was intended, although it may be of some value to him.*

If parties by clear and explicit terms provide that time shall be of the essence of their contract, nothing but the act of God will excuse a failure to perform.

Where one contracts to erect a house at an unfavourable season, evidence that he was prevented from performing his contract by the state of the weather, is to be received with great caution. He must show that he has done his whole duty.

ERROR to the Common Pleas of *Cumberland county.*

This was an action of *assumpsit* by Phillips & King against John Miller, to recover the price of building a house, under the following agreement between the parties :—

---

* See this question discussed in the Court of Appeals of New York, in Smith *v.* Brady, 3 *Smith* (N. Y.) 178.

(218)

" Article of agreement for building, made the 16th October 1856, between John Miller, of Silver Spring township, of the first part, and Phillips & King, of Mechanicsburg, Cumberland county, of the second part, in these words : The party of the second part covenants and agrees with the said Miller, to make and erect a building, and finish a certain portion of work, in a good and substantial manner, a three story brick dwelling-house, agreeable to the draft and plans, explanation hereunto annexed, of ordinary material, to be finished by April next.   And the said Miller agrees to pay unto the said Phillips & King of the second part, the sum of $1200, as follows—$100 when the cellar is walled, and the rest when the house is finished. And for the true and faithful performance of all and every of the covenants and agreements above mentioned, the parties to these presents covenants and agrees, each with the other, that the sum of one hundred dollars, as fixed, and settled and aliquidated damages, shall be paid to either by the failing parties.

John Miller.<br>Phillips & King."

By the specifications, the house was to be 22 by 24 feet—nine inch wall.

In February 1857, the contractors had erected and roofed in the building; but it was so badly constructed that it could with difficulty be made to sustain a roof; and the party employed to plaster it, abandoned his work, and refused to proceed, for fear that the walls should tumble down.

The work was then suspended, and on the 28th February 1857, the defendant gave the following notice to the plaintiffs :—

"Mechanicsburg, February 28, 1857.

" Messrs. Phillips & King :

" Gentlemen—You are hereby notified, that I intend to hold you to a full and faithful compliance with the article of agreement entered into between us, on the 16th day of October 1856.

" I also notify you, that the building you have erected on my lot, is not a good and substantial building, nor such as was contemplated by our article.

" My objections to it are, that the materials, or most of them, out of which it is constructed, are bad, and must have been when put in unfit for use ; that it is not built in a workmanlike manner ; that it is so loosely and inartificially erected ; that it would be absolutely dangerous to occupy it.   These things I think you will discover, if you have not already done so, on examination.

" You must, therefore, understand that I do not intend to take any such building off your hands ; but, if your contract is not completed, at the proper time, and in the proper manner, I will

[*Miller v.* Phillips *et al.*]

hold you and each of you responsible for all damages I may sustain in consequence of its non-fulfilment.

Respectfully yours, &c.

JOHN MILLER."

On the 27th April 1857, the defendant, having been informed that the plaintiffs were about to pull down a portion of the walls, and to rebuild them, gave them the following notice:—

"Mechanicsburg, 27th April 1857.

"Messrs. Phillips & King:

"Gentlemen—You appear determined to persist in going on with the house you commenced for me, under our article of the 16th of October 1856, notwithstanding the constant and repeated notices that I have given you, that I will not take it off your hands, and that I consider our contract at an end. You appear determined now to tear down part, and rebuild. I therefore again notify you, that I have no contract with you for that purpose; that I consider our contract of the 16th October 1856, at an end, on the 1st of April 1857; that I will take no house that you may now build, fix or patch up, off your hands; but that I will hold you responsible for damages for a non-compliance with your contract.

"You are hereby also notified, to remove all material belonging to you off my lot, as I want the immediate possession of it, otherwise I will be compelled to bring an action against you.

Respectfully yours, &c.

JOHN MILLER."

The plaintiffs, notwithstanding this notice, went on, and pulled down two of the walls; rebuilt them, and proceeded to finish the house, which was completed in July 1857. They then brought this suit upon the contract, alleging that the house was now a good and substantial building, and finished according to contract.

On the trial in the court below, the plaintiffs offered to prove that the winter, in which the house was to be erected, was remarkably severe; and that, as soon as the weather permitted, they went on, remedied the defects, and completed their contract before the 1st July. To the admission of this evidence the defendant's counsel objected; but the court admitted the evidence, and sealed a bill of exceptions.

In regard to the house, as completed in July, there was much contradictory and irreconcilable evidence, as to the character of the work; the plaintiffs' witnesses testifying that it was "a good common job;" and those of the defendant, that it was built in an unsafe, unskilful, and unworkmanlike manner.

In answer to numerous points, presented by the plaintiffs and

[Miller v. Phillips et al.]

defendant, the learned judge (GRAHAM, P. J.) instructed the jury, that time was not in such cases of the essence of the contract; that, if the building, as finished in July, was still unfit for the purposes intended, if it was of no value to the defendant, and added nothing to the value of his ground, the plaintiffs could not recover; but, if the building was of value to the defendant, and added to the value of his lot, then the jury should find that value, and find for the plaintiffs; first deducting the damages sustained by the defendant from the delay in finishing the work, and also a payment of $100 made by him on the contract.

To this charge the defendant excepted; and a verdict and judgment having been rendered for the plaintiffs for $750, the defendant sued out this writ, and here assigned for error: 1. The admission of the evidence as to the state of the weather whilst the building was in progress. 2. The charge of the court below.

*W. H. Miller*, for the plaintiffs in error, cited *Addison on Contracts* 447, 454, 874; 2 *Parsons on Contracts* 541–5, 185, 188; Preston v. Finney, 2 *W. & S.* 54–5; Danville Bridge Co. v. Pomroy, 3 *Harris* 159; Hull v. Rupley, 10 *Barr* 233; Chambers v. Jaynes, 4 *Barr* 43; Waugh v. Shunk, 8 *Harris* 133; *Jones on Bailments* 91; 2 *Kent's Com.* 458; *Story on Bailments* 281; *Story's Eq.* § 776; Hopewell v. Knight, 1 *Y. & C.* 415; 1 *Johns. Ch.* 370; Shaw v. Turnpike Co., 3 *Penn. R.* 445.

*W. M. Penrose* and *A. B. Sharpe*, for the defendant in error, cited Hopewell v. Knight, 1 *Y. & C.* 416; Hearne v. Tenant, 13 *Ves.* 287; *Sugden on Vendors* 357–8; *Story on Bailments*, § 441 b; *Chitty on Contracts* 582; *Addison on Contracts* 447–8; Farnsworth v. Garrard, 1 *Camp.* 38; Wade v. Haycock, 1 *Casey* 382; *Addison on Contracts* 446–7, 353–4.

The opinion of the court was delivered by

THOMPSON, J.—On the 16th of October 1856, Phillips & King contracted with Miller, to furnish the materials and build for him, a brick dwelling-house, of given dimensions, "to be finished by April next." Judicial construction according with the common understanding of the country, has defined this expression to mean, before the 1st of April: Rankin v. Woodworth, 3 *Penn. R.* 48.

In the month of February 1857, the contractors had progressed so far as to have a building erected and under roof; but so badly constructed that it was with difficulty the workmen—to use the expression of one of them—could "top it out," or that it could be made to sustain a roof. It was out of plumb, and half the width of one wall was self-sustaining, without even the defective foundation to rest on. The mechanic engaged to do the plastering, abandoned his job through apprehensions of the building falling

[Miller *v.* Phillips *et al.*]

upon him, from the disturbance occasioned in moving his scaffold-ings. The uncontradicted evidence in the case—as the learned judge remarked—showed, that in consequence of defects in the foundation the wall had cracked and bulged, and the building was unfit for a dwelling. On the 28th February, after the superstruc-ture was thus erected, Miller gave the contractors notice, that he would hold them to a strict compliance with the contract. The building remained without further progress, until about the 27th of April following, when the contractors commenced pulling down some of the walls with a view to rebuild them, when Miller noti-fied them that the time within which the contract was to be com-pleted had expired, and "that he would take no house that they might now build, fix, or patch up, off their hands," and requested them to remove the materials from his premises. Notwithstand-ing this notice, they pulled down the greater part of one side of the building, took up the foundation and rebuilt it, together with the walls, and finished the building, as they alleged, in compliance with their contract, about the 1st of July 1857; after which, this suit was brought on the contract, to recover the price agreed to be paid for the work, amounting to $1200.

The contract in this case was entire, and the recovery must rest on performance, or not be allowed at all. True, a qualification of the terms is permitted in equity, so as to relieve against minor deficiencies, both in quality and in time. But the equitable inter-ference is to sustain the exception to performance, and not to sub-stitute new terms or times in the contract. Hence it was said, in Preston *v.* Finney, 2 *W. & S.* 55, and in substance in Chambers *v.* Jaynes, 4 *Barr* 43, "that if a party acting honestly, and with a *bonâ fide* intention of fulfilling the contract, performs it sub-stantially, but fails in some comparatively slight particular, he is entitled to a fair compensation according to the contract; the other party receiving credit for whatever loss or damage he may have sustained by these deviations."

Performance has necessarily relation to time, and although it may not have expressly been made of the essence of the contract, yet it may become so notwithstanding. If one stipulate for the commencement of any particular work under a contract, at a spe-cified time, or agree to finish work by a certain day, and neither commences by the time, or does anything toward finishing his contract by the day, the party for whom the work was to be done may choose to rescind and put an end to the contract, being in no default himself. He is not bound to await the tardy movements of an indolent or regardless contractor, who, if permitted to go on, might again and again disappoint the expectations of his employer. In contracts for the purchase of property, if a time be fixed for the payment of money and delivery of the title, it is always within the power of the party ready to perform, to rescind

[Miller *v.* Phillips *et al.*]

the contract, if the other party is unable or unwilling to perform on his part.   And where purchase-money has been paid, the vendee will be permitted to recover it back, if the vendor neglects, or refuses, or is unable to make the deed.   It is necessary, in case of rescission, that the party against whom it is made, should be placed in *statu quo*, as nearly as possible.

If there be no performance within time, the contract may be rescinded.   If there be substantial performance, with only minor deficiencies, it may not be.   If there be defective, negligent, and worthless performance, it can only be placed in the category of non-performance; to be treated, as in fact it is, no performance, or part performance whatever.   The present is a most marked case of this latter sort.   No suppositive instance could better illustrate the justice of the principle we are discussing, than the one before us.   A house was to be built by the first of April.   In form or semblance merely, it was put up, but confessedly unfit for a dwelling-house, as conceded by the acts of the contractors themselves. The walls were bulged, crooked, and so cracked and weak, that workmen were unwilling to risk their lives in it to perform the necessary work of finishing.   This was all that was done towards the completion of the contract, during the entire period within which the work was to be finished.   After the time was out, and more than out, for performing the work, and the contractors returned and commenced pulling down the defective and broken walls to rebuild them, Miller gave them notice not to proceed any further—that on account of their worthless compliance with their contract, he chose to rescind it, and he gave them an opportunity to place themselves in *statu quo*, by inviting them to remove their material from his premises.   Under the facts disclosed by the evidence, he had a full right to do so, and it was necessary, if he wished to protect himself from being liable for what they might do thereafter.   It was a case in which the undisputed evidence showed there was no performance—not merely a case of imperfection, but of total deficiency, so far as they had gone, and the work must be done over again to be of any value as a dwelling-house.   The employer was not bound, in law or morals, to give them another trial of their care and skill.   Notwithstanding the notice, they proceeded with the work, and finished it, as already stated, about the first of July.   Having disregarded their contract, and the notice of their employer, they proceeded at their peril to rebuild the house.   And if the evidence on another trial shall make out that the work done between the 16th of October and the 1st of April, was done in an unskilful, negligent manner, and it was not a substantial compliance with the contract, they will not be entitled to recover in this suit.

We think the court erred in negativing the defendant's points, and consequently in affirming the plaintiffs' third point; and that

the case should have been put to the jury on the question of performance, as we have stated the law. We think the principle of recovery laid down by the learned judge, that "if it was a house inferior to what the contract required, but of value to the defendant," the plaintiffs might recover, was quite too liberal to insure full performance by contractors. A work, although radically defective, in view of the purpose for which it was intended, and in every way inferior to the performance contracted for, yet might be esteemed of value to the employer—and if he should upon this rule be bound to pay for it, it would be a virtual substitution of one thing for another—a liability to pay for what was not contracted for, and a failure to obtain what was the object of the stipulation. The law calls for honest, substantial performance, regardless of trifling defects, when passing upon that question, and the judgment of men will always determine what will be a sufficiently close compliance with the requirements of the stipulations, to insure substantial justice. We have been treating of contracts containing the ordinary designations of time for completion, in which some latitude is usually yielded to an honest effort to complete within time. Where parties choose by clear and explicit terms to make time of the essence of the contract, performance to be entitled to compensation must be within it, and nothing but the act of God, rendering compliance physically impossible, will excuse a failure.

On the question of damages for delay in finishing a work partially completed, the unfavourable state of the weather, if it may be fairly presumed to have had the effect, against all due diligence of the party, to delay his operations, may, in many cases, be evidence. And in the aspect in which this case was presented it was evidence, and would again be evidence, if, the performance being found to be good and substantial, the claim for damages should rest, in any particular, on delay. But, as the contractor takes the risk of the season, when he undertakes to perform work at an unfavourable time, it should be received with great caution, and only in aid of a clear equity on his part. He must have done his whole duty before it should be allowed to mitigate damages in his favour. We think the case was put to the jury erroneously in the particulars adverted to, and for the reasons given the judgment must be reversed.

Judgment reversed and a *venire facias de novo* awarded.