The CRISPIN COMPANY

v.

DELAWARE STEEL COMPANY, Inc.

and

The Philadelphia National Bank.

Civ. A. No. 38697.

United States District Court
E. D. Pennsylvania.

April 26, 1968.

John Mattioni, Mattioni, Mattioni & Mattioni, Philadelphia, Pa., for plaintiff.

Erwin Miller, Zoob, Cohan & Matz, Philadelphia, Pa., for defendant, Delaware Steel Co.

K. Robert Conrad, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant, The Philadelphia Nat. Bank.

## OPINION AND ORDER

WOOD, District Judge.

Plaintiff, Crispin Company, has moved for summary judgment as to liability alone against Delaware Steel Company, Inc. Plaintiff is the seller on a commercial agreement of cold rolled sheets of steel in coils, which had to be transported from Europe. Defendant Philadelphia National Bank was the issuer of a letter of credit to secure payment of the purchase price of the goods. P.N.B. dishonored the draft because of alleged defects in the documents. Delaware refused to accept shipment at the dock.

Four different purchase orders were placed by Delaware with Crispin. Two are not involved because shipment was made and accepted. Delaware sent its purchase order forms to Crispin in Texas. Crispin sent back "Confirmation" forms with typed conditions on the front and printed form conditions on the back. The front of the sheet stated "We are pleased to acknowledge receipt of your order and to advise that we have received cabled notice that it has been booked by the mill, subject to any possible correction upon receipt of formal written mill confirmation and subject to the standard conditions printed on the reverse side of the sheet, your order is entered as follows:"

The transaction was originally C.I.F. but was converted to a C. & F.[1] after sub-

---

1. "The term C.I.F. means that the price includes in a lump sum the cost of the goods and the insurance and freight to the named destination. The term C.&F. or

sequent negotiations. The seller purchased the goods from Bowfer & Co., Inc., the sales agent for "USINOR", a French steel mill. All of the orders were solicited in Philadelphia by a sales representative from Crispin but were subject to the approval of the home office.

There were extensive negotiations between the parties, before and after the confirmations were sent out. Terms were altered on several occasions. Crispin's confirmations were eventually signed by Delaware and returned, at Crispin's insistence. Certain conditions were changed and agreed to by Crispin. Delaware eventually took out a letter of credit for Crispin's benefit. Plaintiff argues that the letter and the sales contract were distinct legal documents, related only because the contract provided that a letter would be issued.

■ Plaintiff's theory of the case is that Crispin complied with all of the terms of the sales contract as embodied in the confirmation, that defendant unjustly rejected the goods when this remedy was not even available and that it was forced to sell at a lower price. It relies heavily on the nature of the C. & F. transaction.[2] Defendant alleges that the terms of the letter of credit became part of the sales contract and that Crispin breached the contract. We are compelled to deny summary judgment because of a number of material questions of fact.

Preliminarily, it is noted that Crispin is a resident of the State of Texas. The parties have not argued any choice of law problems. They have, however, assumed applicability of Pennsylvania law. We have proceeded in accord with their assumptions without deciding the question.

■■ Defendant argues that Crispin breached the contract because the goods were transported by a charter party vessel, contrary to the terms of the letter of credit. This defense depends on whether the terms of the letter are part of the sales agreement. Mr. Brownstein, the President of Delaware, stated on deposition, "it was understood that the letter of credit that we would open would have to be acceptable to him and would be then part of the contract." (p. 25). The President of Crispin received the letter and it was apparently acceptable to him. We cannot pick and choose what is more probable than not on this motion. Brownstein's deposition clearly presents a genuine issue of fact as to whether there was mutual assent to incorporation of the terms of the letter into the contract. Plaintiff's contentions as to the relationship of the letter of credit to the original sales agreement are sound theories of law but are not applicable to the facts before us on this motion. The parties can generally make whatever contract they want. If they chose to incorporate the terms of the letter, the Court will enforce their agreement. The parole evidence rule, U.C.C. § 2–202, has no application here because we cannot say on this record whether the parties *intended* the confirmations to be a final expression of their agreement. Impermissible inferences favorable to plaintiff would otherwise have to be drawn.

■ Next, the contract provided that "This order is uncancellable by buyer or seller provided shipment is made from European port not later than June 30, 1965." From this language, it would appear that the order is cancellable if shipment is made later than June 30, 1965. The original date of July 15, 1965 was scratched out by Delaware and replaced by the present date. According to plaintiff's brief, the entire shipment of coils was received by the ship on the docks in Dunkirk by June 18, 1965. All but three coils were loaded aboard the vessel on or before June 21, 1965. The three coils remaining were loaded aboard the ship by June 29, 1965. The vessel sailed from the docks at the port of Dunkirk on July 1, 1965 and departed from the harbor

C.F. means that the price so includes cost and freight to the named destination." U.C.C. § 2–320(1).

2. The duties of buyer and seller are contained in U.C.C. § 2–320.

early in the morning of July 2, 1965. Plaintiff argues that the word "shipment" means delivery to the transportation company for shipment. The fact finder may agree with plaintiff's position at trial. However, what is clear in this case is that what the term means is doubtful. The word must be given the interpretation which a reasonably intelligent person would accord it and must be construed against Crispin as the author. It might appear to that hypothetical reasonable man that the word means what it says, that the ship must actually have started its trip by June 30, 1965. We do not hold that this is the proper construction as a matter of law but that the parties should have the opportunity to introduce evidence to show their intent and the fact finder should have the opportunity to draw reasonable inferences of fact. Bank of Taiwan v. Union Nat'l Bank, 1 F.2d 65 (3rd Cir. 1924), is not on point because there was a full trial in that case and the word "from" follows "shipment" in this case.

It may appear that both alleged breaches of contract are so trivial that we could hold that they should not preclude recovery because plaintiff substantially performed. However, that is not the case. Again, from the deposition of Brownstein, it appears that Crispin insisted quite literally on the performance of every contractual detail. He stated, "It was so much emphasizing on everything being specific; that the difference of a day or a minute was so important to Mr. Crispin. (sic)" (P. 21). There are other such examples of Crispin's attentiveness to details in the record. If the parties intended these terms to be conditions to the contract, the Court will probably enforce them. Miller v. Phillips, 31 Pa. 218 (1858). Whether they were of the essence of the contract is ultimately a matter for the fact finder, as is the question as to whether the breaches were waived by subsequent conduct.

Plaintiff's motion to strike the affidavit of Robert Wolf is moot and will not be considered. There are in addition other legal questions involved which may or may not present genuine issues of fact on which we feel no conclusions should be made by us.

### ORDER
And now, this 26th day of April, 1968, it is ordered that plaintiff's motion for summary judgment is denied.