Diverse Networks v. Time Warner Entm't., 2012 NCBC 3.

STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF WAKE                 08 CVS 15395

| | | |
|---|---|---|
| DIVERSE NETWORKS, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER ON** |
| | ) | **DEFENDANT'S MOTION** |
| TIME WARNER ENTERTAINMENT- | ) | **FOR SUMMARY JUDGMENT** |
| ADVANCE/NEWHOUSE PARTNERSHIP | ) | |
| d/b/a TIME WARNER CABLE, EASTERN | ) | |
| CAROLINA DIVISION, | ) | |
| Defendant | ) | |

THIS CAUSE, designated a complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, all references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Chief Special Superior Court Judge for Complex Business Cases, now comes before the court upon the Defendant's Motion for Summary Judgment (the "Motion"), pursuant to the provisions of Rule 56(c), North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, having considered the Motion, arguments and briefs in support of and in opposition to the Motion and appropriate matters of record, CONCLUDES that the Defendant's Motion should be GRANTED in part and DENIED in part for the reasons stated herein.

> *Poyner & Spruill, LLP, by David W. Long, Esq. and John W. O'Hale, Esq. for Plaintiff.*

> *Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Reid L. Phillips, Esq. and Benjamin R. Norman, Esq. for Defendant.*

Jolly, Judge.

## PROCEDURAL HISTORY

[1]     On September 2, 2008, Plaintiff Diverse Networks ("Diverse") filed its Complaint in this matter.  The Complaint alleges claims ("Claims(s)") for relief in four (4) counts: Count I – Breach of Contract, Count II – Quantum Meruit, Count III – Unfair and Deceptive Trade Practices and Count IV – Negligent Misrepresentation.

[2]     Defendant Time Warner Entertainment Advance New House Partnership d/b/a Time Warner Cable, Eastern Carolina Division ("TWC") answered timely and raised several affirmative defenses.

[3]     On August 14, 2009, TWC filed the Motion.

[4]     The Motion has been fully briefed and argued, and is ripe for determination.

## FACTUAL BACKGROUND

Unless otherwise indicated herein, the material facts reflected in paragraphs 5 through 17 of this Opinion and Order exist, are undisputed[1] and are pertinent to the issues raised by the Motion.

[5]     Diverse is a Jacksonville, Florida-based communications company that installs cable television into residential homes, schools and businesses.[2]  Ray Grimsley ("Grimsley") is the President and CEO of Diverse.[3]

---

[1] It is not proper for a trial court to make findings of fact in determining a motion for summary judgment under Rule 56.  However, it is appropriate for a Rule 56 order to reflect material facts that the court concludes exist and are not disputed, and which support the legal conclusions with regard to summary judgment.  *Hyde Ins. Agency v. Dixie Leasing Corp.*, 26 N.C. App. 138 (1975).
[2] Compl. ¶ 2.
[3] *Id.* ¶ 3.

[6]     TWC is a Delaware corporation doing business in the State of North Carolina.[4]

[7]     Diverse and TWC entered into three successive written agreements in the years 2001, 2002 and 2007, regarding cable installation in North Carolina (the "Installation Agreement(s)").

<u>The 2001 Installation Agreement</u>

[8]     On or about July 11, 2001, the parties entered in an agreement (the "2001 Agreement") whereby Diverse agreed to install cable for TWC in the Raleigh, North Carolina metropolitan area.[5]  Pursuant to the 2001 Agreement, the contract between the parties commenced on July 11, 2001, and was to continue for five (5) years, unless the relationship was terminated.[6]  Termination could occur after timely, written notice "or immediately upon default of performance by [Diverse]."[7]

[9]     Additionally, the 2001 Agreement provided that "Installation Prices will increase at a rate of the CPI (Consumer Price Index) + 1% each year.  This rate change will be effective 1 year after the signature date of this contract and will be adjusted using the same formula each year thereafter until the termination of the agreement."[8]  As such, the CPI increase was to become effective on July 12, 2002.

[10]    However, on or about May 16, 2002, prior to the one-year time frame at which the CPI rate change was to become effective, the parties entered into another Installation Agreement (the "2002 Agreement").[9]

---

[4] *Id.* ¶ 4.
[5] *Id.* ¶ 7
[6] *Id.*, Ex. A, 2001 Agreement ¶ 18.
[7] Compl. ¶ 7.
[8] *Id.* ¶ 21.
[9] Br. Supp. Mot. Summ. J. ("Def. Brief") 4.

## The 2002 Installation Agreement

[11]    The 2002 Agreement was substantially similar to the 2001 Agreement. However, the 2002 Installment Agreement provided that "[t]his Agreement supersedes any and all other Agreements, either oral or in writing between the parties hereto with respect to the subject matter hereof, and no other Agreement, statement or promise relating to the subject matter of the Agreement which is not contained herein shall be valid or binding."[10]  As with the 2001 Agreement, the 2002 Agreement was to continue for five (5) years, unless terminated.[11]

[12]    The 2002 Agreement differed from the 2001 Agreement with regard to the formula for determining the installment prices.  The 2002 Agreement provided:

> Installment Prices will increase at a rate of the Consumer Price Index for all Urban Consumers each year and shall not exceed 4% on an annual basis.  This rate change will be effective 1 year after the signature date of this contract and will be adjusted using the same formula each year thereafter until the termination of the agreement."[12]

## 2003 New Payment Policy

[13]    As a result of internal issues surrounding late claims for payment from installation contractors, TWC implemented a new payment procedure in March 2003 (the "2003 Payment Policy").  Under the 2003 Payment Policy, each day TWC generated and transmitted to each installation contractor a preliminary report showing the number and type of installations performed by that contractor from the previous day and the amount to be paid to the contractor.[13]  The installation contractor was required

---

[10] Def. Brief Ex. 1, 2002 Agreement ¶ 16.
[11] *Id.* ¶ 18.
[12] *Id.* ¶ 21.
[13] Jones Aff. ¶ 14.

to review the report for discrepancies and return it to TWC promptly.[14]  If there were no discrepancies, TWC reprinted a report (the "DDR"), e-mailed it to the installation contractor and paid the amount listed on the DDR.  Diverse agreed to this new payment procedure.[15]  On March 13, 2003, Grimsley, on behalf of Diverse, signed an agreement setting forth in detail the terms and conditions for this new 2003 Payment Policy.[16]

[14]    Even though the 2001 and 2002 Agreements included a CPI increase provision, TWC never paid Diverse a CPI increase.[17]

<u>The 2007 Installation Agreement</u>

[15]    The third Installation Agreement between Diverse and TWC was signed on or about March 15, 2007 (the "2007 Agreement").[18]  The 2007 Agreement was noticeably different from the 2001 and 2002 Agreements.  Under the 2007 Agreement, Diverse would continue to perform installation services for TWC; however, there was no provision for rate increases tied to the CPI.  The 2007 Agreement was to continue for a period of one (1) year with automatic renewals, unless notice of termination was given.[19]

[16]    The termination provisions of the 2007 Agreement provided that TWC "may at any time, terminate the Agreement for TWC's convenience and without cause."[20]  However, the 2007 Agreement also provided that "either party may terminate

---

[14] *Id.* ¶ 15.
[15] *Id.* ¶¶ 16-17.
[16] Def. Brief Ex. 3.
[17] Compl. ¶ 11; Answer ¶ 11.
[18] Compl. ¶ 12.
[19] *Id.* Ex. B, 2007 Agreement § 18.
[20] *Id.* § 16.

this Agreement at any time upon giving sixty (60) days written notice to the other, or immediately upon default of performance by [Diverse]."[21]

[17] On April 23, 2008, TWC notified Diverse via letter that it was terminating the 2007 Agreement, pursuant to section 16 of the contract.[22]

## PARTIES' CONTENTIONS

[18] Diverse alleges that TWC had a duty under the 2001 Agreement to adjust Diverse's installation rates by the CPI increase for the years 2001 through 2007, and that TWC breached the 2001 Agreement by failing to pay the CPI increase.[23] Diverse seeks retroactive adjustment of all payments made to it by TWC between 2001 and 2007, which amounts to more than $1.6 million.[24]

[19] TWC contends that Diverse's Claim for breach of contract, as to the 2001 Agreement, is barred by the doctrines of modification, waiver, laches, account stated and novation. TWC argues, among other things, that (a) the 2001 Agreement was replaced by two subsequent agreements and (b) under the 2003 Payment Policy, Diverse signed a report for each day's work but failed to raise the issue that it was not being paid a CPI increase.[25]

[20] In response, Diverse contends that its compliance with TWC's 2003 Payment Policy does not amount to a waiver of its rights under the 2001 Agreement because the 2003 Payment Policy was merely an administrative protocol and did not affect TWC's duty to pay the CPI increase.[26] Further, Diverse argues that TWC contracted away its right to assert equitable defenses against Diverse's Claim for

---

[21] *Id.* § 18.
[22] Def. Brief Ex. 6.
[23] Compl. ¶¶ 40-42.
[24] *Id.* ¶ 40; Pl. Br. Opp. Def. Mot. Summ. J. Mot. Strike ("Pl. Brief") 23
[25] Def. Brief 10-23.
[26] Pl. Brief 7.

breach of contract because the 2001, 2002 and 2007 Agreements contain non-waiver clauses that reserved each party's right to require performance of any term of the Agreement at any time, regardless of whether that party insisted upon performance during the term of the contract.

[21] The Diverse Complaint also alleges that TWC breached the 2007 Agreement by failing to provide adequate notice of termination and pay all outstanding invoices and performance incentives due to Diverse.[27]

[22] TWC contends that Diverse's Claim for breach of contract, as to the 2007 Agreement, should be dismissed because TWC properly terminated Diverse pursuant to section 16 of the 2007 Agreement, and that even if the court determines that the notice of termination was improper, Diverse suffered no damages.[28]

[23] TWC further contends that Diverse's Claim for quantum meruit should be dismissed because the parties entered into express written contracts, which precludes recovery based on the theory of implied contract.

[24] Lastly, TWC argues that Diverse's remaining Claims of unfair and deceptive trade practices and negligent misrepresentation are not supported by Plaintiff's allegations or the forecast of evidence before the court.

<u>DISCUSSION</u>

[25] Under Rule 56(c), summary judgment is to be rendered "forthwith" if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that upon the forecast of evidence there exists no genuine

---

[27] Compl. ¶¶ 43-51. In response to the Motion, Diverse only contends that TWC breached the 2007 Agreement by failing to provide timely notice of termination. Thus, it appears Diverse has abandoned any claim for unpaid invoices or performance incentives under the 2007 Agreement.
[28] Def. Brief 23-24

issue as to any material fact and that any party is entitled to a judgment as a matter of law. *Grayson v. High Point Dev. Ltd. P'ship*, 175 N.C. App. 786, 788 (2006). The court views the evidence in the light most favorable to the nonmoving party. *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733 (1998).

### Count I – Breach of Contract

### The 2001 Agreement

[26] TWC raises multiple affirmative defenses, which it argues serve as a bar to Diverse's Claim for breach of the 2001 Agreement. Specifically, TWC contends that Diverse's claim for breach of contract, as to the 2001 Agreement, is barred by novation because the parties substituted the 2002 Agreement in place of the 2002 Agreement.[29]

[27] However, there exist genuine issues of material fact as to whether the parties' intended for the 2002 Agreement to constitute a novation of the 2001 Agreement. Further, there exist genuine issues of material fact with respect to TWC's other affirmative defenses, including the theories of modification, waiver, laches and account stated, and whether Diverse's conduct bars it from asserting a Claim for breach of the 2001 Agreement.

[28] Accordingly, TWC's Motion should be DENIED as to Plaintiff's Count I Claim for breach of contract under the 2001 Agreement, and that Claim should proceed to trial on its merits.

### The 2002 Agreement

[29] As a threshold issue, the court observes that Diverse has failed to allege breach of the 2002 Agreement in the Complaint. In fact, neither the Complaint nor

---

[29] In its brief in opposition to the TWC's Motion, Diverse moved to strike TWC's defense that the 2007 Agreement constituted a novation because that defense was not asserted during discovery. However, on March 2, 2010, Diverse withdrew its motion to strike TWC's novation defense.

TWC's Answer makes any reference to the 2002 Agreement. Rather, the 2002 Agreement was brought before the court by TWC in its Motion. Specifically, TWC attached the 2002 Agreement to the Motion,[30] and its brief discusses the 2002 Agreement as if Diverse had alleged a breach by TWC. At the same time, TWC's brief points out, in two footnotes, that Diverse "overlooks" the 2002 Agreement and "has not made any allegations regarding the [2002 Agreement]."[31] Diverse has not responded to TWC's contention that breach of the 2002 Agreement has not been alleged, nor has Diverse sought leave to amend its Complaint. Neither party has commented further with regard to the absence of a claim in the Complaint or a defense in the Answer mentioning the 2002 Agreement.

[30]    Nonetheless, the parties' briefs clearly reflect an implicit understanding that the 2002 Agreement is a central issue in this case. Both parties discuss at length the terms and application of law to the 2002 Agreement as if it is the most important point of contention between the parties.

[31]    As such, the evidence and arguments presented by both parties, at the summary judgment stage, have placed an unpleaded claim before the court.

[32]    Rule 15(b) provides that "when issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Such amendments to conform the pleadings to the evidence have been allowed at the summary judgment stage. *See L&S Leasing v. City of Winston-Salem*, 122 N.C. App. 619, 621 (1996) ("[E]ven if the defenses should have been affirmatively stated in defendant's answer, this Court has held that the nature

---

[30] Pl. Mot. Summ. J. Ex. 1.
[31] Def. Brief 22-23.

of summary judgment procedure (G.S. 1A-1, Rule 56), coupled with our generally liberal rules relating to amendment of pleadings, require that unpleaded affirmative defenses be deemed part of the pleadings where such defenses are raised in a hearing on motion for summary judgment.").

[33]   The North Carolina Supreme Court, in *North Carolina National Bank v. Gillespie*, held that "unpleaded defenses, when raised by the evidence, should be considered in resolving a motion for summary judgment." 291 N.C. 303, 306 (1976). However, the "better practice dictates that even where pleadings are deemed amended under the theory of 'litigation by consent,' the party receiving the benefit of the rule should move for leave of court to amend, so that the pleadings will actually reflect the theory of recovery." *McDevitt v. Stacy*, 148 N.C. App. 448, 455 (2002) (quoting *Roberts v. Mem'l Park*, 281 N.C. 48, 59 (1972)).

[34]   Generally, "[a] formal amendment to the pleadings 'is needed only when evidence is objected to at trial as not within the scope of the pleadings.'" *Id.* (quoting *Taylor v. Gillespie*, 66 N.C. App. 302, 305 (1984)); *see also Mangum v. Surles*, 281 N.C. 91, 98 (1972) ("[W]here no objection is made to evidence on the ground that it is outside the issues raised by the pleadings, the issue raised by the evidence is nevertheless before the trial court for determination. The pleadings are regarded as amended to conform to the proof even though the defaulting pleader made no formal motion to amend.").

[35]   Here, the issue is whether TWC objected to the introduction of the 2002 Agreement as outside the scope of the pleadings.  Aside from the two footnotes in its brief, whereby TWC contends Diverse has failed to allege breach of the 2002

Agreement, TWC has placed the 2002 Agreement at issue by raising it in the Motion. It bears repeating that TWC was the first party to place the 2002 Agreement before the court. While TWC raises the 2002 Agreement as a defensive tactic to bar recovery under the 2001 Agreement, TWC also argues that recovery under the 2002 Agreement is barred, as though it is before the court. As such, the court concludes that the parties' conduct constitutes "litigation by consent," and pertinent pleadings are deemed amended to include an alleged breach of the 2002 Agreement.

[36]    Even if TWC's two footnotes constitute a valid objection to the 2002 Agreement as evidence outside the scope of the pleadings, the court finds that an amendment should be allowed so that this case will proceed on the merits. Further, if the amendment is allowed, TWC is unable to make a showing of prejudice because both parties have made arguments regarding the merits of a claim by Diverse under the 2002 Agreement.

[37]    With regard to the merits of a claim for recovery under the 2002 Agreement, the court concludes that there exist genuine issues of material fact as to whether Diverse waived any right to collect unpaid CPI increases between 2003 and 2007.[32] Specifically, there are factual issues with respect to whether Diverse's claim for the unpaid CPI increase is barred by TWC's affirmative defenses of modification, waiver, laches and account stated. There also are existing factual issues regarding the scope and applicability of the non-waiver clause as a bar to the equitable defenses raised by TWC.

---

[32] Similar to the 2001 Agreement, the CPI increase provision of the 2002 Agreement did not become effective until one (1) year after execution thereof, May 2003.

[38]    Moreover, there are existing genuine issues of material fact with respect to whether the parties intended for the 2007 Agreement to constitute a novation of the 2002 Agreement.

[39]    Accordingly, TWC's Motion should be DENIED as to Plaintiff's Count I Claim for breach of contract under the 2002 Agreement, and that Claim should proceed to trial on its merits.

### 2007 Agreement

[40]    Diverse also contends that TWC breached the 2007 Agreement by failing to provide sixty (60) days notice prior to termination.[33]

[41]    Under the 2007 Agreement, there are two separate provisions that address how TWC may terminate its contractual relationship with Diverse.  Section 18 of the 2007 Agreement provides that "either party may terminate this Agreement at any time upon giving sixty (60) days written notice to the other . . . ."  Additionally, section 16 of the 2007 Agreement provides that "TWC may, at any time, terminate the Agreement for TWC's convenience and without cause."  While written notice is a requirement under section 16, it may be provided contemporaneously upon the effective date of termination.

[42]    Diverse contends that sections 16 and 18 of the 2007 Agreement are contradictory, ambiguous and should therefore be construed against TWC, the drafter.[34] However, sections 16 and 18 are not conflicting.  Section 16 allows only TWC to terminate the 2007 Agreement for convenience at any time and for any reason.  To the contrary, section 18 allows either party to terminate after providing at least sixty (60)

---

[33] Pl. Brief 23-24.
[34] *Id.* 23-24.

days notice. Section 16 is distinct because it allows only TWC to terminate for convenience, without prior notice.

[43] Here, TWC provided written notice to Diverse that it was terminating the 2007 Agreement "for convenience per contract section 16."[35] As such, the notice of termination complied with section 16 of the 2007 Agreement.

[44] Even if the court determined that TWC's conduct constituted a breach of section 18 of the 2007 Agreement, Diverse has not alleged any damages, and the evidence shows none exist.

[45] TWC had no obligation to assign any work to Diverse, so even if the notice had informed Diverse that the relationship was being terminated in sixty (60) days, TWC could have chosen not to assign work to Diverse for that period. Therefore, Diverse is unable to assert that it suffered any damages because TWC had no duty to assign work for that time period.

[46] Accordingly, there exists no genuine issue of material fact as to Plaintiff's Count I Claim for breach of contract under the 2007 Agreement. TWC is entitled to judgment in its favor as a matter of law as to said Claim, and as to it the Motion should be GRANTED.

<u>Count II – Quantum Meruit</u>

[47] Diverse contends that it should be allowed to proceed to trial on its quantum meruit Claim, even if its Claim for breach of contract is dismissed. However, "[i]t is a well established principle that an express contract precludes an implied contract with reference to the same matter." *Keith v. Day* 81 N.C. App. 185, 198 (1986) (quoting *Vetco Concrete Co. v. Troy Lumber Co.*, 256 N.C. 709, 713-14 (1962)).

---

[35] Def. Brief Ex. 6.

[48]     Accordingly, Plaintiff's Count II Claim for quantum meruit fails because the parties' relationship between 2001 and 2007 was governed by three express contracts: the 2001, 2002 and 2007 Agreements.  As such, there exists no genuine issue of material fact as to Plaintiff's Count II Claim for quantum meruit.  TWC is entitled to summary judgment in its favor as a matter of law as to said Claim, and as to it the Motion should be GRANTED.

<u>Count III – Unfair and Deceptive Trade Practices</u>

[49]     Diverse's Complaint alleges that TWC committed unfair and deceptive trade practices when it (a) represented to Diverse that it should purchase additional vehicles and equipment to prepare for additional installation business and (b) improperly assisted Nationwide Cable Company and A+ Cable Company in hiring Diverse employees after Diverse was terminated.[36]

[50]     To establish a claim for unfair and deceptive trade practices, the plaintiff must show that (a) defendant committed an unfair or deceptive act or practice, (b) in or affecting commerce and (c) plaintiff was injured as a result.  *Phelps-Dickson Builders, L.L.C. v. Amerimann Partners,* 172 N.C. App. 427, 439 (2005).

[51]     Diverse's Claim for unfair and deceptive trade practices fails because the evidence does not support the facts alleged.  Further, the evidence shows that Diverse was not proximately damaged by the alleged wrongful conduct.

[52]     As to Plaintiff's allegation that TWC asked Diverse to purchase additional vehicles and equipment, the forecast of evidence reflects that TWC only requested

---

[36] Compl. ¶¶ 58-59.  It is noteworthy that Diverse does not contest TWC's Motion as to the Claims for unfair and deceptive trade practices and negligent misrepresentation.  While it appears that Diverse has abandoned these Claims, the court nonetheless addresses the merits of TWC's Motion, as applied to both Claims.

Diverse to think about expanding and purchasing new equipment and create a plan. [37] Diverse never actually acted on the request and therefore suffered no injury. [38]

[53]     With respect to the allegation that TWC assisted other companies in hiring Diverse employees, the forecast of evidence reflects that Diverse had very few employees, and had no need to retain employees after it lost its contract with TWC. [39] In sum, Diverse has forecast no admissible evidence that TWC assisted other companies in hiring Diverse's employees or that Diverse suffered any injury.

[54]     Accordingly, there exists no genuine issue of material fact as to Plaintiff's Count III Claim for unfair and deceptive trade practices.  TWC is entitled to summary judgment in its favor as to said Claim, and as to it the Motion should be GRANTED.

<u>Count IV – Negligent Misrepresentation</u>

[55]     Diverse's Complaint alleges that TWC committed the tort of negligent misrepresentation when it represented that Diverse would receive additional installation business from TWC. [40]

[56]     The tort of negligent misrepresentation occurs when a party (a) justifiably relies, (b) to his detriment, (c) on information prepared without reasonable care, (d) by one who owed the relying party a duty of care.  *Simms v. Prudential Life Ins. Co. of Am.*, 140 N.C. App. 529, 532 (2000).  For purposes of negligent misrepresentation, justifiable reliance requires actual or direct reliance.  *Brinkman v. Barrett Kays & Assocs., P.A.*, 155 N.C. App. 738, 742 (2003).

---

[37] Def. Brief 25 (citing Diverse Dep. 136:10-137:7).
[38] *Id.*
[39] *Id.* 26 (citing Diverse Dep. 196:1-8, 142:8-20; Baker Dep. 35:21-36:4).
[40] Compl. ¶ 65.

[57] Here, Diverse has forecast no evidence showing that it took any affirmative steps in reliance upon the alleged promise of additional business.

[58] Accordingly, there exists no genuine issue of material fact as to Plaintiff's Count IV Claim for negligence misrepresentation. TWC is entitled to summary judgment in its favor as to said Claim, and as to it the Motion should be GRANTED.

NOW THEREFORE, based upon the foregoing, it is ORDERED that:

[59] As to Plaintiff's Count I Claims for breach of contract under the 2001 Agreement and the 2002 Agreement, the Motion is DENIED.

[60] As to Plaintiff's Count I Claim for breach of contract under the 2007 Agreement, the Motion is GRANTED and said Claim is DISMISSED.

[61] As to Plaintiff's Count II Claim for quantum meruit, the Motion is GRANTED and said Claim is DISMISSED.

[62] As to Plaintiff's Count III Claim for unfair and deceptive trade practices, the Motion is GRANTED and said Claim is DISMISSED.

[63] As to Plaintiff's Count IV Claim for negligent misrepresentation, the Motion is GRANTED and said Claim is DISMISSED.

[64] On January 25, 2012, at 11:00 a.m., at the North Carolina Business Court, 225 Hillsborough Street, Suite 303, Raleigh, North Carolina, the court will conduct a hearing and status conference with all parties to this action for the purpose of setting this matter for trial and determining any remaining pre-trial issues.

This the 9th day of January, 2012.