Robert **FREDERICKS**

v.

**GEORGIA–PACIFIC CORPORATION.**

**Civ. A. No. 70–3418.**

United States District Court,
E. D. Pennsylvania.

Sept. 10, 1971.

Jerome Groskin, Philadelphia, Pa., for plaintiff.

John H. Leddy, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

EDWARD R. BECKER, District Judge.

This is a three-count civil action brought by plaintiff Robert Fredericks ("Fredericks") against Georgia-Pacific Corporation ("Georgia-Pacific"), his former employer. The first count seeks damages for Georgia-Pacific's failure to permit Fredericks to exercise options under a written stock option contract. The second count seeks recovery of Fredericks' forfeited distributable interest in Georgia-Pacific's stock bonus trust. The third count, pleaded in the alternative to the second count, seeks to recover the forfeited distributable interest on the basis of quasi-contract should the contractual allegations (Count II) fail.

The case comes before us on Georgia-Pacific's Rule 12 motion to dismiss all three counts of the complaint for failure to state a claim upon which relief can be granted. For the reasons hereinafter stated, Georgia-Pacific's motion to dismiss is granted as to Count I (the stock option contract), but is denied as to Counts II and III (the stock bonus trust).

The well-pleaded facts are as follows: Fredericks was the president of Bestwall Gypsum Company ("Bestwall"), a Pennsylvania corporation. On April 29, 1965, Georgia-Pacific acquired and merged with Bestwall. In an effort to effect a smooth assimilation of Bestwall, Georgia-Pacific hired Fredericks as a division general manager. There was no written employment contract between the parties, and the employment relationship was for no fixed term and was terminable at will by either party.[1] Frederick's employment with Georgia-Pacific terminated on November 30, 1969. The circumstances of termination are a material issue in the controversy because of their legal effect upon Fredericks' rights in the instruments in question.

When Fredericks commenced employment with Georgia-Pacific on April 29, 1965, he became a member of Georgia-Pacific's non-contributory stock bonus trust, which the complaint alleges was an inducement to him to enter into employment. Under the terms of the trust instrument, a certain percentage (dependent upon the number of years contributions were made) of an employee's distributable interest in the fund would be forfeited if, *inter alia*, the employee voluntarily left the defendant's employ,

---

1. Although not contained in the pleadings, the parties stipulated to this fact at oral argument.

or if he was discharged with or without cause.

On July 27, 1965, after having been employed by Georgia-Pacific for approximately three months, Fredericks and Georgia-Pacific entered into a written stock option contract whereby Fredericks agreed to remain in Georgia-Pacific's employ for a two-year period in consideration of Georgia-Pacific's grant to Fredericks of an option to purchase 1,000 shares of Georgia-Pacific stock, exercisable at the rate of 20% per year over a five-year period. Although the stock option plan contains Fredericks' agreement to remain in Georgia-Pacific's employ for at least two years, the stock option plan states that "this Agreement shall not be deemed to limit or restrict the right of the Company to terminate the Optionee's employment at any time, for any reason, for or without cause." In addition, the contract provided that the option would terminate and be of no force or effect upon "[t]he termination of the Optionee's employment by the Company * * *."

On June 27, 1967, the administrative and managerial functions of Georgia-Pacific's Gypsum Division (formerly Bestwall) were transferred to its main office in Portland, Oregon, and Fredericks thereupon relocated himself and his family at Portland. He remained in Georgia-Pacific's employ until November 30, 1969, when he resigned from the company by "mutual agreement". According to paragraph 7 of the complaint:

"Plaintiff had done and performed all things which by the aforesaid contract he covenanted to do and perform, and was at all times ready, willing and able to continue in defendant's employ but was wrongfully prevented and hindered from doing so by defendant which, after it had accomplished its purpose of effecting the transfer of the Gypsum Division under plaintiff's supervision, *undertook to induce plaintiff's resignation from defendant's employ by a series of minor and major humiliations and harassments, thus making it impossible for the employment relationship to continue beyond November 30, 1969, as of which date the said relationship was severed by mutual agreement * * *"* (emphasis added).

Prior to his termination of employment, Fredericks had exercised 80% of the stock options. On June 17, 1970, he tendered a check for $11,321.10 in exercise of the option to purchase the remaining shares of stock, but the tender was rejected by the defendant. The market value of the shares at that time was $29,201.25. On February 20, 1970, Georgia-Pacific declared that Fredericks' termination of employment also resulted in a forfeiture of 90% of the distributable interest (approximately $19,420) earned by him in the stock bonus trust according to a forfeiture schedule contained within the trust instrument.

Fredericks now sues to recover the difference between the market value and the option price of the tendered stock options, and the forfeited distributable interest. Before reaching the question of the sufficiency of the specific counts in the complaint, however, we must turn to a determination of the proper choice of law to be applied, and of the standards for disposing of a motion to dismiss.

I.

The threshold question is that of the proper choice of law to be applied in construing the stock option plan and stock bonus trust. The stock option plan is silent as to the applicable state law that governs, and in such a case the courts have uniformly held that the validity and construction of stock options are determined by the laws of the state of incorporation. Rogers v. Guaranty Trust Co., 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652 (1933); Ellis v. Emhart Mfg. Co., 150 Conn. 501, 191 A.2d 546 (1963); Beard v. Elster, 39 Del.Ch. 153, 160 A.2d 731 (Sup.Ct.1960). In this case, Georgia-Pacific is incorporated under the laws of the State of Georgia. The stock bonus trust specifically provides that it is to be governed by, and construed in accordance with, the laws of the State of Ore-

gon. However, the paucity of cases in this area, and the fact that no Georgia or Oregon cases have been found on point, mutes the choice of law question. Accordingly, we have looked to cases in other jurisdictions, for we find no reason to believe that the Supreme Court of Georgia or Oregon would construe the stock options and bonus plans in question in a manner different from those of the courts upon whose decisions we draw for instruction.

In disposing of Georgia-Pacific's motion to dismiss, we, of course, make no determinations as to the truthfulness of Fredericks' allegations or the probability of success of his case. We are bound by the allegations contained in the complaint, and, unless it appears to a certainty that Fredericks would be entitled to no relief under any state of facts, the action may not be dismissed for failure to state a claim. Supchak v. United States, 365 F.2d 844 (3d Cir. 1966); Melo-Sonics Corp. v. Cropp, 342 F.2d 856 (3d Cir. 1965); Hughes v. Local No. 11 of International Assn. of Bridge, Structural & Ornamental Ironworkers, 287 F.2d 810 (3d Cir.), cert. denied, 368 U.S. 829 (1961).

Having set forth Georgia-Pacific's difficult burden on a motion to dismiss, we will now deal with the counts in the complaint seriatim.

## II.

In Count I of the complaint, Fredericks seeks damages for Georgia-Pacific's failure to permit him to exercise the remaining 20% of the stock options. Under the terms of the option contract, any unexercised options terminated upon the termination of the optionee's employment, except in the case of death. Furthermore, the contract specifically provided that "this Agreement shall not be deemed to limit or restrict the right of the Company to terminate the Optionee's employment at any time, for any reason, for or without cause."

Citing this language in the option contract, Georgia-Pacific asserts that Fredericks cannot exercise his stock options after his employment with the company terminated. It adds that Fredericks was an astute businessman who entered into an open-ended employment relationship with the full knowledge that any benefits of employment could be terminated at any time. In Georgia-Pacific's view, the fact that Fredericks was "forced to resign," rather than having been discharged, is of no consequence, because in either event, the option contract terminated upon *any* termination of employment (other than death).

Fredericks, seeking to avoid the termination provisions in the option contract, rests his case upon the hornbook principle that one who hinders performance cannot take advantage of the other's failure to perform all the terms of the contract. *See, e. g.,* 5 S. Williston, Law of Contracts § 677A (3d ed. 1961); Restatement of Contracts § 295 (1932). Applied here, he contends that the deliberate humiliations and harassments which made it impossible for the employment relationship to continue, leading to the severance by mutual agreement, constitutes such a hindrance. Fredericks admits that Georgia-Pacific had the *right* to discharge him with or without cause, and that this course of action would have terminated all his rights in the stock option contract. But, he argues, Georgia-Pacific's position must be measured, not by what it had a right to do and did not do (*i. e.,* discharge him), but by what it did do, and that by forcing him to resign by "major and minor humiliations," defendant acted wrongfully and outside the terms of the contract, thereby excusing him from having to be in the defendant's employ when he attempted to exercise the remaining stock options.

Plaintiff cites three cases to support his position. In Langer v. Iowa Beef Packers, Inc., 420 F.2d 365 (8th Cir. 1970), the court permitted the plaintiff to exercise his stock options after the defendant sold its plant to another corporation and assigned the plaintiff's employment contract to that corporation,

even though the option contract stated that the options would terminate in the event that the optionee ceased to be an employee of the defendant. The court noted that the sale of the defendant's business was an extraordinary contingency which was not anticipated by the parties and not contemplated in the option contract. Since the contract was silent as to such an event, the court construed the ambiguity in the optionee's favor and permitted recovery.

In Gaines v. Monroe Calculating Machine Co., 78 N.J.Super. 168, 188 A.2d 179 (1963), the stock option contract provided that the options would terminate if the plaintiff's employment terminated, either voluntarily or involuntarily, within five years. Plaintiff was discharged without cause prior to the completion of five years' service, and the defendant thereafter refused to accept the plaintiff's exercise of his options. In permitting recovery, the court held that a discharge without cause constituted a breach of the underlying employment contract and was not the same as an "involuntary" termination of employment. Since the defendant breached the employment contract by discharging the plaintiff without cause, the plaintiff was entitled to damages for the defendant's failure to allow him to exercise his options.

Finally, in O'Brien v. United Home Life Ins. Co., 147 F.Supp. 761 (E.D. Mich.1957), aff'd per curiam, 250 F.2d 483 (6th Cir. 1958), the court denied recovery after finding that the parties mutually consented to the plaintiff's termination of employment. The district court noted, by way of dictum, that had the facts at trial established that the defendant had made it impossible for the plaintiff to remain in its employ in order to deprive him of his right to the stock options, then the plaintiff would have been entitled to judgment.

While we believe that the above cases were rightly decided on their facts, we find their precedent inapplicable to the facts of the instant case. In Langer, the sale of the plaintiff's employment contract was an extraordinary event not contemplated in the option contract, and the court therefore resolved this ambiguity in the optionee's favor. Unlike Langer, the plaintiff's termination of employment in the manner described in the instant case was neither unusual nor unforeseeable. In Gaines, the employment contract did not reserve to the employer the broad right to discharge an employee without cause. Thus, in Gaines, unlike the instant case, the defendant's discharge of the employee was a breach of the underlying employment contract and the employee was entitled to all damages flowing from the breach. Finally, while the language in O'Brien would seem to lend some support to plaintiff's theory, the court there found a mutual termination of employment. Thus the court's hypothesis of what it might have done had the facts been otherwise constitutes nothing more than dictum. Moreover, the language in the court's opinion indicates that plaintiff may have been entitled to recover only if he had proved that the defendant had forced him to resign *for the purpose* of depriving him of his stock options. In the instant case, there is no allegation that Georgia-Pacific's motive was to prevent Fredericks' exercise of the remaining stock options; nor is such motive readily apparent in view of the fact that Fredericks has already exercised 80% of the options.

It is true that a motion to dismiss is granted only in clear cases (see cases cited *supra*). Nonetheless, even if all the facts were to develop at trial just as Fredericks has alleged, there would still be no basis for recovery.

Fredericks has alleged facts from which he argues that Georgia-Pacific hindered his performance, which, for purposes of this case, would consist of remaining in Georgia-Pacific's employ until the time he exercised the stock options. Fredericks contends that Georgia-Pacific's position must be measured, not by its absolute discharge rights, which it did not exercise, but by its actual conduct.

The resolution of the issues involved requires that we focus principally upon *Fredericks'* rights under the agreement. However, as we have seen, they were scant indeed. The stock option contract provides that it terminates upon any termination of employment (other than death). The employment relationship vests absolute termination rights in the employer. In a situation where such absolute termination rights exist, we cannot accord to the employee higher rights in the stock option agreement merely because the circumstances of termination of employment are framed not in an express discharge, but in an induced resignation. There is no basis for such a result in view of the tenor of the agreement between the parties.

In discussing the concept of hindrance of performance, Professor Williston states, "An exception to this principle must be made where the hindrance is due to some action of the promisor which under the terms of the contract * * * he was permitted to take" 5 S. Williston, Law of Contracts § 677A, at 235 (3d ed. 1961). *See also* Restatement of Contracts § 295(b) (1932). If this is a "hindrance of performance" case, then, in view of the tenor of the agreement, of the broad scope of Georgia-Pacific's rights, and of what we have just said of our being unable to accord higher rights in the agreement because of the "induced resignation" situation, we find this principle to be applicable here.

It is a well-settled rule of law that where an ambiguity exists in a contract, it will be construed against the drafter. *See* Alcoa S.S. Co. v. United States, 338 U.S. 421, 70 S.Ct. 190, 94 L.Ed. 225 (1949); Crispin Co. v. Delaware Steel Co., 283 F.Supp. 574 (E.D.Pa.1968); Giustina v. United States, 190 F.Supp. 303 (D.Ore.1960), aff'd, 313 F.2d 710 (9th Cir. 1962). However, we find no ambiguity in the contract such as would require construction against the drafter.

To the contrary, the contract, and its provision that it terminates upon any termination of employment (other than death) is clear to us and certainly must have been to Fredericks, who was a businessman and the president of a large corporation which had been acquired by a still larger one. We might be impelled to reach a different result if we were to find that the contract was unconscionable or adhesive, but under the circumstances we do not.

Although a broad forfeiture clause in an employment or option contract may work harsh results, a court must act only upon the language of the written contract, which is what we do here. Moreover, where the employment relationship can be terminated by either party at any time without liability to the employer for unexercised stock options or similar benefits, other courts have supported our view and have held that an employee's rights will terminate upon the termination of employment. Haag v. International Telephone & Telegraph Corp., 342 F.2d 566 (7th Cir. 1965); Fontius Shoe Co. v. Lamberton, 78 Colo. 250, 241 P. 542 (1925); Montgomery Ward & Co. v. Guignet, 112 Ind. App. 661, 45 N.E.2d 337 (1942).

In Haag v. International Telephone & Telegraph Corp., *supra*, plaintiff sued his former employer to recover damages arising out of the employer's refusal to honor his attempted exercise of a stock option subsequent to his termination of employment. The plaintiff conceded that had his employment been for no fixed term, then defendant could have discharged him without cause and not be obligated to accept a tender of the option. However, plaintiff contended that his employment relationship was orally amended to a fixed term, and that defendant's conduct in discharging him without cause prior to the expiration of this term permitted him to recover the value of the stock options.[2] In affirm-

2. Plaintiff also alleged, as did the plaintiff in *O'Brien, supra,* that the defendant discharged him for the *purpose* of preventing him from exercising the option. By holding that the employer had the absolute right to discharge him without any liability, the court apparently considered this allegation irrelevant.

ing the judgment for the defendant and accepting the lower court's finding that no fixed term of employment existed, the court held that plaintiff's right to exercise the stock option terminated upon his discharge from employment.

In Fontius Shoe Co. v. Lamberton, *supra*, an employee sued his former employer to recover a bonus under a written contract. The bonus, based upon the employee's sales, was to be paid on the 15th of the month following the month during which it was earned. Furthermore, the bonus reserved to the employer the right to discharge the employee for any reason without liability for the bonus. In *Fontius*, the plaintiff was dismissed on the first of the month, and sought to recover his bonus which would have been due that month. The lower court found that the defendant discharged the plaintiff arbitrarily and capriciously without cause, and permitted the plaintiff to recover. On appeal, the court reversed and held that even if the lower court's finding was correct, plaintiff was unable to recover:

"The defendant company seems to have incorporated into the contract language which permits such conduct on its part, and also to deprive an employee of his bonus in the event of such a discharge.

\* \* \* \* \* \*

So far as the bonus is concerned, the contract in the instant case is nothing more than an announcement of the policy of the defendant. *Its forfeiture provisions seem harsh, but we can act only upon the contract which the parties have made.*" *Id.*, 241 P., at 543 (emphasis added).

Similarly, in Montgomery Ward & Co. v. Guignet, *supra*, the court denied recovery under a bonus plan where the employee was discharged without cause prior to the time when he could receive the bonus. The court noted that the bonus plan permitted the employer to discharge the employee at any time and that the employee voluntarily accepted the terms of his employment.

"Having become bound by the provisions governing the payment of the bonus, the appellee must meet the conditions stipulated in this plan before he can share in its benefits." *Id.*, 45 N.E.2d at 339.

Although the stock option provisions involved here are one-sided, they are, as we have said, not unconscionable, and Fredericks voluntarily accepted their terms. Accordingly, having left the employment of Georgia-Pacific prior to exercising the remaining options, Fredericks' right to exercise the options terminated. For the reasons we have stated, the circumstances of his leaving, *i. e.*, a severance by mutual agreement induced by humiliations and harassments calculated to induce resignation, can make no difference. Fredericks fails to state a claim upon which relief can be granted, and Count I of his complaint must be dismissed.

### III.

In Count II of the complaint, Fredericks seeks to recover the distributable interest in Georgia-Pacific's noncontributory stock bonus trust, which provided for a forfeiture of a certain percentage (90% in this case) of Fredericks' share upon his voluntary termination of employment or upon his discharge with or without cause. *Unlike the stock option plan in Count I*, which provided a forfeiture of stock options upon *any* termination of employment, the stock bonus trust in Count II provided for a forfeiture only upon the occurrence of either of two events: (1) Fredericks' voluntary termination of employment; or (2) Georgia-Pacific's discharge of Fredericks, with or without cause.

According to Fredericks, the difference in the contract language between the stock option plan and the stock bonus trust is critical, because he contends that he was neither discharged nor did he voluntarily terminate his employment. It is clear that a forced resignation is not synonymous with a discharge. Fredericks also argues that it

is equally clear that a forced resignation is not necessarily the same as a voluntary termination. We agree.

██ In Russell v. Princeton Laboratories, Inc., 50 N.J. 30, 231 A.2d 800 (1967), an employee sued his former employer for pension plan benefits. The plan provided for a forfeiture of rights and benefits either upon the employee's voluntary severance of employment or his discharge for cause. The plan also contained a provision which allowed full payment of the pension if the employee's mental or physical disability prevented further performance of duty. Due to the plaintiff's failing health, it was agreed by both parties that he could no longer adequately perform his job, and therefore the employment was terminated by mutual consent. In refusing to give the plaintiff the pension, the defendant contended that the mutual termination constituted a voluntary severance. The court, however, disagreed and granted judgment for the plaintiff on two separate grounds: (1) plaintiff was totally and permanently disabled within the meaning of the pension plan provision; and (2) plaintiff's separation was not a voluntary termination. Speaking on the latter point, the court noted:

> "That provision contemplates a forfeiture if the employee chooses to go elsewhere notwithstanding his continued usefulness to his employer. * * When both the employer and the employee must agree that continued employment would be against their respective interests, it would be absurd to say that a forfeiture of the employee's earnings should turn upon which one outlasted the other in a relationship that could not endure. Common sense called for an agreement to terminate, and that is precisely what happened according a fair reading of the affidavits. Plaintiff did not quit and he was not fired. Rather the parties agreed the employment had to end." Id. at 36–37, 231 A.2d at 804.

We agree with the Russell court that a "voluntary" resignation contemplates that the employee chooses to go elsewhere. Here, however, Fredericks states in his complaint that he was ready, willing and able to continue in Georgia-Pacific's employ but was prevented from doing so. As thus pleaded, we conclude that Fredericks' forced resignation is not a voluntary termination, and that Count II of the complaint states a valid cause of action. We reject as meritless Georgia-Pacific's argument that Fredericks' rights in the trust are determined by the membership clause in the trust instrument, which provides that membership in the trust ceases "upon termination of employment of a member for any reason * * *." It is, of course, obvious that Fredericks' membership in the stock bonus trust terminated upon his termination of employment. The issue, however, is not continued membership in the trust, but rather whether the forfeiture provisions apply to Fredericks. As we have already stated, we conclude that the forfeiture provisions do not apply in this case.

We realize that this conclusion creates an anomaly. Had Georgia-Pacific discharged Fredericks, then, under the clear terms of the bonus plan, Fredericks would have no cause of action. However, where an ambiguity exists in a contract, it will be construed against the drafter. We hold that, by alleging that Georgia-Pacific forced his resignation instead of discharging him, Fredericks does state a claim for relief on Count II of the complaint which he should have an opportunity to prove.

IV.

██ Count III is framed in the alternative to Count II. In essence, Fredericks contends that if he cannot recover under the written stock bonus trust, he is nonetheless entitled to recover in quasi-contract on the basis that the bonus trust represents additional compensation and that Georgia-Pacific would be unjustly enriched by his forfeiture in the fund. Fredericks alleges in his complaint that, in reliance upon Georgia-Pacific's offer to make contributions to its

stock bonus trust as additional compensation to him, he entered into employment, and that by withholding his distributable interest as a forfeiture, and appropriating this interest to its own use and benefit, Georgia-Pacific has become unjustly enriched by the sum of $19,420.01.

Georgia-Pacific, in its motion to dismiss, has asserted that the doctrine of quasi-contract is inapplicable where the relationship between the parties is founded upon a written agreement or express contract. *See, e. g.,* 12 S.Williston, Law of Contracts § 1477, at 257 (3d ed. 1961). Thus, according to Georgia-Pacific, Fredericks' right to recover the forfeited distributable interest must stand or fall on Count II of the complaint; and that if Fredericks cannot recover under the contract, he cannot then seek to recover under another theory.

We disagree. Although it is generally held that the theory of quasi-contract is inapplicable where an express contract exits, general contract law has also recognized that restitutionary recovery on the basis of unjust enrichment in personal service contract cases is guided by equitable principles. The Restatement of Contracts § 357, at 627 (1932) states the general rule as follows:

"Where the defendant fails or refuses to perform his contract and is justified therein by the plaintiffs' own breach of duty or non-performance of a condition but the plaintiff has rendered a part performance under the contract that is a net benefit to the defendant, the plaintiff can get judgment * * * for the amount of such benefit in excess of the harm that he has caused to the defendant by his own breach in no case exceeding a ratable proportion of the agreed compensation, if the plaintiff's breach or non-performance is not wilful and deliberate."

*See also* 6 Corbin, Contracts §§ 1369–72 (1962).

Citing the above language, a federal court has recently held that discharged employees could recover forfeited pension plan rights on the basis of quasi-contract even though they were precluded from recovering under the terms of the plan itself. In Lucas v. Seagrave Corp., 277 F.Supp. 338 (D.Minn.1967), a class action was brought on behalf of 65 former employees against their former employer to recover their forfeited interest in the defendant's non-contributory pension plan. Under the terms of the plan, the employees were only entitled to pension benefits if they continued in employment until retirement. In *Lucas*, the employer engaged in a mass firing of the plaintiffs and thus precluded them from fulfilling this condition. Nonetheless, the court permitted quasi-contractual recovery on the theory that the employer had unjustly benefited from the plaintiffs' forfeiture in the pension fund. The court noted:

"If a plaintiff who has breached a contract by failure to fulfill a condition may recover for the benefit he confers, it would seem equitable that employees, who failed to perform the conditions of the pension plan (continued employment until retirement) because of a group termination, should be entitled to an amount equal to the benefit conferred on an employer. The employees' failure to fulfill the conditions of the pension contract is not wilful, indeed, it is quite involuntary. The employer is not in a position to argue that he is harmed by a non-performance of the pension conditions, in fact, he causes it." *Id.* at 344–345.

Moreover, the court rejected the defendant's argument that the plaintiffs assumed the risk of being fired and not receiving pension benefits. According to the *Lucas* court, "a quasi-contractual recovery has been held available even though it appears that employees have agreed to assume the risk of contingencies which may render impossible the complete performance of a service contract." *Id.* at 345.

In the instant case, it is alleged that: (1) Fredericks performed services for Georgia-Pacific, and, as part of his com-

pensation, was entitled to membership in Georgia-Pacific's stock bonus trust; (2) that Georgia-Pacific engaged in inequitable conduct in order to force him to resign; and (3) that the benefits accruing from his share of the trust should not therefore revert to Georgia-Pacific upon his termination of employment. The point is a close one. However, under these well-pleaded facts, we cannot say on a motion to dismiss that the reversion of benefits would not be inequitable and would not unjustly enrich Georgia-Pacific. Accordingly, Georgia-Pacific's motion to dismiss Count III of the complaint is denied, and Fredericks will have an opportunity to prove his interest in the stock bonus plan on the theories stated in Counts II and III of the complaint.