Mancinelli v. Momentum Research, Inc., 2012 NCBC 28.

STATE OF NORTH CAROLINA

COUNTY OF DURHAM

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
09 CVS 1383

KAREN L. MANCINELLI,
                    Plaintiff

          v.

MOMENTUM RESEARCH, INC.,
                    Defendant

)
)
)
)
)
)
)
)

**OPINION AND
ORDER REGARDING
CONFLICT OF LAWS**

THIS MATTER comes before the court upon the parties' conflicting submissions regarding whether, and to what extent, the laws of North Carolina or Delaware should apply to Plaintiff's claim for breach of contract under a purported shareholder agreement or pre-incorporation agreement ("Submission(s)"); and

THE COURT, after considering the Submissions and other appropriate matters of record, CONCLUDES that Delaware law should apply to Plaintiff's Second Claim, as reflected herein.

*Glenn, Mills, Fisher and Mahoney, PA, by Carlos E. Mahoney, Esq. for Plaintiff.*

*Jordan Price Wall Gray Jones & Carlton, PLLC, by Paul T. Flick, Esq. and Lori P. Jones, Esq. for Defendant.*

Jolly, Judge.

PROCEDURAL BACKGROUND

[1]    On November 4, 2009, Plaintiff Karen L. Mancinelli filed her Amended Complaint ("Complaint"), in which she alleges three claims for relief ("Claim(s)"): First Claim (Breach of Contract – Employment Agreement), Second Claim (Breach of

Contract – Shareholder Agreement or Pre-Incorporation Agreement) and Third Claim (Violations of the North Carolina Wage and Hour Act).

[2]     On January 12, 2012, the court entered an Opinion and Order on Defendant's Motion for Summary Judgment, by which the court granted summary judgment in Defendant's favor on Plaintiff's First Claim for breach of contract as to her employment agreement. *Mancinelli v. Momentum Research, Inc.*, 2012 NCBC 3, ¶ 61 (N.C. Super. Ct. Jan. 12, 2012).  The court denied Defendant's Motion for Summary Judgment ("Summary Judgment Motion") as to Plaintiff's Second and Third Claims.  *Id.* at ¶¶ 62-63.  In denying the Summary Judgment Motion as to Plaintiff's Second Claim, the court deferred ruling on whether Delaware or North Carolina law should apply to that Claim.[1]

[3]     Subsequently, the court entered a briefing schedule directing the parties to provide briefs explaining their respective positions as to whether Delaware or North Carolina law should apply to determine Plaintiff's Second Claim.

[4]     The parties have briefed the issue, and as this matter is quickly approaching trial, the court now finds it appropriate to determine which state's law should apply.

FACTUAL BACKGROUND

[5]     Plaintiff alleges that she was induced to leave her employment with Duke Clinical Research Company and help form and work for Momentum Research, Inc. ("Momentum") by an oral promise by Dr. Gad Cotter, M.D. ("Cotter") in March 2007.[2] Plaintiff alleges that Cotter promised to make her a fifteen percent (15%) owner of

---

[1] The court deferred ruling on the relevant conflict of laws issue because such a determination was not necessary for resolution of the Summary Judgment Motion.
[2] Compl. ¶¶ 20-25.

Momentum.[3] That alleged oral promise was made in North Carolina prior to Momentum's incorporation in Delaware on or around April 9, 2007.[4]

[6]    Plaintiff further alleges that she was presented with a written shareholder agreement in August 2007 ("Shareholder Agreement"), which purportedly issued her fifteen percent (15%) of Momentum's stock.[5] Plaintiff claims that she reviewed, executed and returned the Shareholder Agreement to Philip W. Lemons, II ("Lemons"), who at the time was Vice President of Momentum.[6] Plaintiff alleges that she never received a copy from Lemons, and she does not recall the specific terms of the Shareholder Agreement, aside from the language issuing her fifteen percent (15%) of Momentum's stock.[7]

[7]    Plaintiff is unable to produce a copy of the Shareholder Agreement and Momentum disputes whether it actually exists. However, Plaintiff has propounded evidence that Lemons and Cotter sent subsequent e-mail messages, acknowledging that Plaintiff had a fifteen percent (15%) ownership interest in Momentum.[8]

[8]    Both parties have forecasted conflicting evidence, raising a factual dispute as to (a) whether Momentum orally promised to issue shares to Plaintiff pre-incorporation, amounting to a fifteen percent (15%) ownership interest in Momentum and (b) whether Momentum and Plaintiff executed a written Shareholder Agreement issuing shares to Plaintiff in the same amount.

---

[3] *Id.*
[4] *Id.*
[5] *Id.* ¶ 58.
[6] Mancinelli Dep. 31-32, 42, 48; Mancinelli Aff. ¶ 9.
[7] Compl. ¶¶ 60-62.
[8] G. Cotter Dep. Exs. 45, 47, 49; Weatherly Dep. Ex. 92.

<u>CONFLICT OF LAWS ANALYSIS</u>

[9]     The parties take different positions concerning whether, and to what extent, the laws of North Carolina or Delaware should apply to the determination of Plaintiff's breach of contract claim under the Shareholder Agreement or a pre-incorporation agreement.[9]

[10]     Momentum contends that because it is a Delaware corporation, the court should apply Delaware law based on a conflict of laws concept commonly referred to as the "internal affairs doctrine."[10]  To the contrary, Plaintiff argues North Carolina law should apply based on the principle of *lex loci contractus* ("*lex loci*").[11]

[11]     North Carolina has adopted the "internal affairs doctrine," which is a conflict of laws principle recognizing that "only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or

---

[9] The parties have not propounded any evidence indicating whether the purported Shareholder Agreement at issue contains a choice-of-law provision.  Plaintiff points out that Momentum's Restricted Stock Purchase Agreements with other shareholders contain choice-of-law provisions providing that North Carolina law governs interpretation of those contracts.  However, the contractual provisions in Momentum's other shareholder agreements are not controlling here, and as such, the court's analysis herein will apply general conflict of laws principles in the absence of an enforceable, controlling choice-of-law provision in the Shareholder Agreement.  It is worth noting that "under the 'internal affairs doctrine,' some courts have declined to give effect to a contractual choice of law provision that seeks to trump the law of the incorporating state in matters involving the internal affairs of a foreign corporation." *Classic Coffee Concepts, Inc. v. Anderson*, 2006 NCBC 21, ¶ 88 (N.C. Super. Ct. Dec. 1, 2006) (citing *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 60 F. Supp. 2d 123 (S.D.N.Y. 1999); *Clark v. Kelly*, No. 16780, 1999 Del. Ch. LEXIS 148 (Del. Ch. June 24, 1999)).

[10] Momentum also contends that Delaware law should apply based on Article 8 of the Uniform Commercial Code, which governs securities and is codified in N.C. Gen. Stat. § 25-8-101 *et seq*. (hereinafter, all references to the North Carolina General Statutes will be to "G.S").  Momentum correctly points out that G.S. 25-8-110 contains a conflict of laws provision, whereby the local law under which an issuer of stock is organized governs disputes pertaining to such securities.  However, G.S. 25-8-110 applies to disputes regarding the (a) validity of a security, (b) effectiveness of a transfer of stock, (c) rights and duties of the issuer with respect to registration of transfer and (d) duties owed by an issuer to an adverse claimant to a security, or the viability of an adverse claim against an individual who receives a certificated or uncertificated security or controls an uncertificated security.  Although Momentum argues that Plaintiff's Second Claim is a dispute involving securities, Momentum does not explain how G.S. 25-8-110 applies here specifically.  Nonetheless, the court need not make a determination about whether Plaintiff's Second Claim falls within the purview of G.S. 25-8-110 because the court concludes that Delaware law should apply pursuant to the "internal affairs doctrine," discussed *infra*.

[11] This doctrine is discussed, *infra*.

between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands." *Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 680 (2008).  Following the "internal affairs doctrine," courts look to the local law of the state of incorporation to determine matters involving a corporation's "internal affairs." *Id.* (citing *Atherton v. FDIC*, 519 U.S. 213, 224 (1997)). "The need for the inner workings of a corporation to be governed by a single body of laws has been frequently emphasized by state and federal courts alike." *Newell Co. v. Petersen*, 758 N.E.2d 903, 923 (Ill. App. Ct. 2001).  The internal affairs doctrine "serves the vital need for a single, constant and equal law to avoid the fragmentation of continuing, interdependent internal relationships." *McDermott Inc. v. Lewis*, 531 A.2d 206, 217 (Del. 1987) (citation ommited).

[12]    The Restatement of Conflict of Laws further explains the doctrine by offering examples of internal affairs, including:

> [S]teps taken in the course of the original incorporation, the election or appointment of directors and officers, the adoption of by-laws, *the issuance of corporate shares*, preemptive rights, the holding of directors' and shareholders' meetings, methods of voting including any requirement for cumulative voting, shareholders' rights to examine corporate records, charter and by-law amendments, mergers, consolidations and reorganizations and reclassification of shares.

*In re PHP Healthcare Corp.*, 128 F. App'x 839, 843 (3d Cir. 2005) (citing Restatement (Second) of Conflict of Laws § 302 cmt. a (1971)) (emphasis added); *see also In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 662 (D. Del. 2003); *Classic Coffee*, 2006 NCBC 21, ¶ 88 (quoting Russell M. Robinson, II, *Robinson on North Carolina Corporation Law*, § 32.05 n.1 (7th ed. 2002)) ("[T]he 'internal affairs' of a corporation

[include] such matters as . . . the sale or redemption by the corporation of its shares or other securities . . . .").

[13]   The ability of a corporation to issue shares is a matter peculiar to the relationship between the corporation and its shareholders, and as such, the "internal affairs doctrine" dictates that only one state's laws should regulate such conduct.  *See Whitney v. Guys, Inc.*, No. 10-4296, 2011 U.S. Dist. LEXIS 92528, at *16 (D. Minn. Aug. 17, 2011) (citing Restatement (Second) of Conflict of Laws § 302, cmt. e (1971)) (recognizing that the "internal affairs doctrine" applies to disputes regarding the issuance of corporate shares).  In the absence of an explicitly applicable local statute to the contrary, the law of the state of incorporation has been applied invariably to determine disputes involving the issuance of shares or stock options.[12]  Restatement (Second) of Conflict of Laws § 302 cmt. e (1971); *see also Beard v. Elster*, 160 A.2d 731, 735 (Del. 1960) ("The issuance of stock option plans by Delaware corporations involves the internal affairs of a Delaware corporation and is, therefore, controlled by the laws of Delaware.").

[14]   With regard to internal affairs, the law of the state of incorporation should be applied except in the extremely rare situation where a contrary result is required by the overriding interest of another state in having its rule applied.  Restatement (Second) of Conflict of Laws § 302 cmt. g (1971).  In deciding whether to deviate from applying

---

[12] Courts have held uniformly that the issuance of stock options is a matter clearly within the purview of the "internal affairs doctrine."  *See, e.g., Rogers v. Guar. Trust Co. of N.Y.*, 288 U.S. 123, 129-30 (1933); *Mariasch v. Gillette Co.*, 521 F.3d 68, 71-72 (1st Cir. 2008); *Fredericks v. Georgia-Pacific Corp.*, 331 F. Supp. 422, 424 (E.D. Pa. 1971).  The court acknowledges that the issuance of stock options to corporate employees and the issuance of shares to founders are two different corporate actions.  Depending on the circumstances, the issuance of shares to founders of a corporation is arguably a matter more intimate to the internal affairs of a corporation.  Accordingly, the case law that defines the internal affairs of a corporation to include the issuance of stock options to corporate employees is persuasive authority here.

the law of the state of incorporation, the following non-exhaustive factors should be considered:

> [a] [T]he nature and extent of the corporation's relationship to the state of incorporation, [b] the nature and extent of the corporation's relationship to the state whose local law is sought to be applied and [c] whether the act . . . cannot practicably be governed by the local law of more than one state.

*Id.*

[15]     Here, Plaintiff's breach of contract claim under the Shareholder Agreement or a pre-incorporation agreement is characterized as a dispute related to the issuance of shares in a corporation.  Specifically, Plaintiff alleges that Momentum promised, orally and in writing, that she would be issued shares amounting to a fifteen percent (15%) ownership interest in Momentum.  This type of dispute clearly is a matter involving a corporation's relationship with its shareholders.  As such, Plaintiff's claim under the Shareholder Agreement or a pre-incorporation agreement is a dispute falling within the scope of the "internal affairs doctrine."

[16]     Plaintiff argues that Delaware law should not be applied here under the "internal affairs doctrine" because North Carolina has the most significant relationship to the contracts and parties at issue.

[17]     Indeed, Momentum's principal place of business is located in North Carolina, Plaintiff resides in North Carolina and the Shareholder Agreement and a pre-incorporation agreement allegedly were entered into in North Carolina.  While those factors certainly weigh against applying the laws of the state of incorporation (Delaware), they do not present an overriding interest of the forum state (North Carolina) in having its law applied.  *See id.*  As a practical matter, the issuance of

shares is not the type of act that should be governed by the law of more than one state. *See id.* cmt. e (discussing the impracticable effects of applying more than one state's laws to certain internal corporate affairs). Thus, there is a strong presumption in favor of following the law of the state of incorporation to uniformly resolve disputes pertaining to the issuance of shares.

[18] Plaintiff further contends that this court should follow the *lex loci* conflict of laws doctrine. The *lex loci* doctrine provides that breach of contract claims should be governed by the law of the state where the contract was formed. *Davis v. Davis*, 269 N.C. 120, 124 (1967); *Morton v. Morton*, 76 N.C. App. 295, 298-99 (1985). Here, Plaintiff argues that North Carolina law should apply because the Shareholder Agreement and pre-incorporation agreement giving rise to her Second Claim were formed in North Carolina.

[19] A dispute exists regarding which conflict of laws doctrine to apply. Despite this conflict, and in light of the policy rationale behind the "internal affairs doctrine," the court concludes the "internal affairs doctrine" should apply to the present case. Applying the *lex loci* doctrine under the facts alleged in this action would erode the "internal affairs doctrine." Such application effectively would render the doctrine meaningless in almost all cases where a corporate internal issue arises from a breach of contract dispute between a shareholder and the corporation. *See Tyco Int'l Ltd. v. Walsh*, 751 F. Supp. 2d 606, 619 (S.D.N.Y. 2010), *rev'd on other grounds*, (discussing the rationale behind the "internal affairs doctrine" and recognizing that "[t]he state of incorporation maintains the greatest interest in regulating the conduct of corporations."); *McDermott,* 531 A.2d at 216 ("The policy underlying the internal affairs doctrine is an

important one, and we decline to erode the principle . . . ."); *Classic Coffee*, 2006 NCBC 21, ¶ 89 (recognizing the "importance of the 'internal affairs doctrine' to the consistent application of the corporate law of [North Carolina] and other states . . . .").  Therefore, notwithstanding the presence of a contractual dispute, the court concludes that it should apply the "internal affairs doctrine," rather than *lex loci*, to resolve the conflict of laws question in this case.

[20]    Accordingly, because Momentum is a Delaware corporation and Plaintiff's Second Claim raises a dispute regarding the issuance of corporate shares – a matter peculiar to Momentum's "internal affairs" – Delaware law should apply to the Second Claim.

[21]    Under Delaware law, a "corporation may create and issue . . . rights or options entitling the holders thereof to acquire from the corporation any shares of its capital stock of any class or classes, such rights or options to be evidenced by or in such instrument or instruments as shall be approved by the board of directors."  Del. Code Ann. tit. 8, § 157(a).  Delaware law requires "strict adherence to statutory formality in matters relating to the issuance of capital stock."  *Anderson v. Dobson*, No. 1:06-cv-2, 2007 U.S. Dist. LEXIS 66103, at *38 (W.D.N.C. Mar. 22, 2007) (quoting *Grimes v. Alteon Inc.*, 804 A.2d 256, 260 (Del. 2002)) (applying Delaware law to the purported issuance of shares at a shareholders meeting held in North Carolina and ruling that because the shareholders failed to comply with § 157 requiring board approval and a writing evidencing issuance, the purported issuance was invalid).  Corporate minutes and other records do not satisfy the above provisions of Delaware law, which requires "a written instrument evidencing the relevant transactions affecting [the] issuance of

stock . . . ." *Grimes*, 804 A.2d at 261 (holding that issuance of corporate stock requires board approval and a writing because issuance of stock "is an act of fundamental legal significance having a direct bearing upon questions of corporate governance, control and the capital structure of the enterprise").  Accordingly, under Delaware law, an oral agreement to issue shares, as Plaintiff has alleged here, is not enforceable.[13]

[22]    In light of Plaintiff's contentions and the court's ruling herein, Plaintiff's Second Claim is untenable to the extent it seeks enforcement of an alleged oral pre-incorporation agreement to issue her shares in Momentum, and in that regard it should be DISMISSED.

NOW THEREFORE, it hereby is ORDERED that:

[23]    Delaware law shall apply in determining the merits of Plaintiff's Second Claim (Breach of Shareholder Agreement or Pre-Incorporation Agreement).

[24]    To the extent Plaintiff's Second Claim alleges breach of an oral pre-incorporation agreement, said Claim is DISMISSED.

[25]    Plaintiff may proceed to trial on her Second Claim to the extent it alleges breach of a written Shareholder Agreement.

This the 17th day of May, 2012.

---

[13] Plaintiff acknowledges that if the alleged Shareholder Agreement is determined to be a valid and binding contract between the parties, then it superseded the pre-incorporation agreement mentioned above.  Compl. ¶ 66.