Davis v. Davis, 2014 NCBC 60.

STATE OF NORTH CAROLINA

COUNTY OF DARE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 388

MELVIN L. DAVIS, JR. and
J. REX DAVIS,

               Plaintiffs

        v.

DOROTHY C. DAVIS and MKR
DEVELOPMENT, LLC, a Virginia Limited
Liability Company,

               Defendants

)
)
)
)
)
)
)
)
)
)
)

OPINION AND ORDER

THIS MATTER is before the Court upon Defendant Dorothy C. Davis' Motion to Dismiss in Lieu of Answer ("Motion") pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, after reviewing the Motion, briefs in support of and in opposition to the Motion, arguments of counsel and other appropriate matters of record, CONCLUDES that the Motion should be DENIED, for the reasons stated herein.

*Williams Mullen, by Camden R. Webb, Esq. and Elizabeth C. Stone, Esq., for Plaintiff.*

*Vandeventer Black LLP, by Norman W. Shearin, Esq. and Ashley P. Holmes, Esq., and LeClairRyan, by Thomas M. Wolf, Esq., for Defendant.*

PROCEDURAL HISTORY

[1]     On July 23, 2013, Plaintiffs Melvin L. Davis, Jr. and J. Rex Davis, allegedly acting derivatively on behalf of MKR Development, LLC ("MKR"), filed the Complaint, naming as Defendants Dorothy C. Davis ("Mrs. Davis") and MKR. The Complaint requests that the Court issue a declaratory judgment finding that the language of the life estate granted to Mrs. Davis by a certain North Carolina deed prohibits Mrs. Davis from renting a piece of real estate ("Property") without the express permission of MKR, and further

requesting that the Court permanently enjoin Mrs. Davis from renting the real estate without the written approval of MKR.

[2]     Mrs. Davis filed her Motion on September 11, 2013, seeking dismissal of the Complaint pursuant to Rules 12(b)(1) and 12(b)(6). The Motion has been fully briefed and argued and is ripe for determination.

FACTUAL BACKGROUND

Among other things, the Complaint alleges that:

[3]     Plaintiffs Melvin L. Davis, Jr. and J. Rex Davis, both citizens and residents of Virginia, are brothers.[1] Mrs. Davis is their mother.[2]

[4]     Plaintiffs and their sister, Kaye Davis ("Kaye"), formed nominal Defendant MKR Development, LLC ("MKR") for the purpose of acquiring, developing, and managing real property.[3] The three siblings own equal interests in, and are managers of, MKR.[4] The MKR Operating Agreement requires unanimous consent of all three managers to "manage the business" of MKR, and that "[t]he Managers acting by their unanimous consent shall have the sole authority to bind" MKR.[5]

[5]     In May 2009, Mrs. Davis and her husband, Melvin L. Davis, Sr., executed a deed as to the Property, located in Dare County, North Carolina.[6] The deed conveyed the Property to MKR, reserving a life estate in favor of the grantors.[7] In the deed Mr. and Mrs. Davis reserved to themselves the following life estate:

> The Grantors hereby reserve unto themselves, a life estate in the Property, said life estate to be personal to the use of the Grantors, or the survivor thereof, and may not be utilized by any other person, nor may it be reduced to

---

[1] Compl. ¶¶ 3-4, 7.
[2] *Id..* ¶ 12.
[3] *Id.* ¶¶ 7-8.
[4] *Id.* ¶ 9.
[5] *Id.* ¶ 11; Compl. Ex. A § 3.2.
[6] *Id.* ¶ 12.
[7] *Id.* ¶ 13; Compl. Ex. B ("Deed"). Melvin L. Davis, Sr., is deceased. Compl. ¶ 14.

a cash value for the benefit of the Grantors, or the survivor thereof, but must always remain during the lifetime of said Grantors, or the survivor thereof, available for their individual and personal use without interference from either the remaindermen or any other person.

[6] Plaintiffs brought this suit in July 2013, on the information and belief that Mrs. Davis or Kaye, acting as Mrs. Davis' power of attorney, had entered into a rental management agreement with a vacation rental company "to periodically rent the North Carolina Property to weekly residential tenants vacationing on the Outer Banks of North Carolina."[8] Plaintiffs contend that the terms of the deed prohibit Mrs. Davis from renting the property, and that the rental agreement violates and/or jeopardizes the MKR's remainder interest in the Property.[9] Plaintiffs allege that they brought the lawsuit as a derivative action on behalf of MKR because they were unable to obtain the unanimous consent required by the Operating Agreement in order to take legal action on behalf of the LLC because Kaye would not consent.[10]

[7] Plaintiffs state that they have taken several steps attempting to obtain the result sought in this proceeding, namely: (1) sending a letter to Mrs. Davis on July 30, 2012, warning her that she was not to use the Property for income purposes;[11] (2) holding a duly called meeting of all MKR member/managers, at which Plaintiffs proposed and Kaye rejected taking legal action to enforce the Deed;[12] and (3) sending a letter from Plaintiffs' counsel (Archbell) to Mrs. Davis' and Kaye Davis' counsel (Wolf) on July 13, 2013, reiterating Plaintiffs' position that Mrs. Davis could not rent the Property and indicating that Archbell would advise MKR to "consider

---

[8] Compl. ¶¶ 15-16.
[9] The Complaint does not expressly allege that that the Property has actually been rented, or that it is being damaged its rental.
[10] Compl. ¶¶ 17-19.
[11] Compl. Ex. C. Plaintiffs contend that this letter cautioned "[b]oth Dorothy Davis and Kaye Davis," Compl. ¶ 19.B, but the letter itself is only addressed to Mrs. Davis.
[12] Compl. ¶ 19.C.

taking the appropriate steps to protect its interest" if Wolf did not respond within ten days.[13] In response to the July 13, 2013 letter, Wolf asserted that Archbell did not have the authority to represent MKR, and that MKR itself could only act with the unanimous consent of its members.[14]

## DISCUSSION

[8]     The Motion challenges the Complaint under Rules 12(b)(1) and 12(b)(6). Defendant argues that the Plaintiffs lack standing to bring the action and that they have not stated a claim upon which relief may be granted. The Court will address each provision of Rule 12 in turn.

### Rule 12(b)(1)

[9]     "Standing concerns the trial court's subject matter jurisdiction and is therefore properly challenged by a Rule 12(b)(1) motion to dismiss." *Fuller v. Easley*, 145 N.C. App. 391, 395 (2001) (internal citations omitted). "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Rule 12(h)(3). Thus, Plaintiffs must establish that they have standing to bring this action on behalf of MKR for this action to survive.

[10]     The standing requirement consists of three elements: (1) injury in fact, which is "an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (2) the injury is traceable to the actions of the defendant; and (3) it is likely that the injury will be addressed by a favorable court decision. *Neuse River Found. v. Smithfield Foods*, 155 N.C. App. 110, 114 (2002).

[11]     In Defendant's Memorandum in Support of Dorothy Davis' Motion to Dismiss ("Defendant's Brief"), Defendant asserts that Plaintiffs lack standing to pursue this action

---

[13] Compl. Ex. D.
[14] Compl. Ex. E.

because (1) they have not alleged anything more than a potential injury resulting from rental of the Property, and (2) Plaintiffs have not obtained unanimous consent to file suit as required by the Operating Agreement.

[12]     At the hearing on this Motion on October 29, 2014, Defendant asserted two further grounds for dismissal of this action under Rule 12(b)(1), both based upon MKR's status as a Virginia limited liability company ("LLC"). First, Defendant argued that Plaintiffs have not met the applicable procedural requirements to bring a derivative lawsuit on behalf of MKR under the Virginia statute. Second, Defendant contended that MKR is prohibited from bringing suit in North Carolina because it is a foreign LLC that has not obtained a certificate of authority to transact business in North Carolina. Despite the fact that Defendant waited over a year from the time that the Motion was filed to raise these arguments, the Court recognizes that Defendant's concerns may have merit and will consider both the arguments presented in the papers and those introduced at oral argument.  The Court will first address the arguments presented by Defendant at the hearing.

### Derivative Lawsuit Requirements—Applicable Law

[13]     MKR is a Virginia LLC.[15] At the October 29, 2014 hearing, counsel for Defendant argued that MKR was prohibited from bringing suit in North Carolina because, as a foreign LLC, MKR may not litigate in North Carolina courts without obtaining a certificate of authority.  Defendant also argued that the procedural requirements for bringing a derivative action on behalf of a foreign LLC are governed by the state in which the LLC was formed, that Plaintiffs must therefore have complied with Virginia LLC law to bring this Complaint, and that Plaintiffs have failed to do so.  Plaintiffs contend that this

---

[15] Compl. ¶ 1.

action is subject to the requirements of the North Carolina's Limited Liability Company Act ("LLC Act").

[14]    The LLC Act has been amended since the commencement of this lawsuit. However, the new LLC Act ("57D") provides that a proceeding commenced before January 1, 2014, "may be completed in accordance with the law then in effect." G.S. § 57D-11-03(b). Though the language in this provision is permissive, rather than mandatory, neither party appears to contest the application of 57C, rather than 57D, to the proceeding before the Court.[16] The Court concludes that the previous Limited Liability Company Act, 57C, should govern its analysis of Defendant's Motion.

[15]    The Court finds no authority in either version of the LLC Act to support Defendant's contention that MKR must obtain a certificate of authority to make an appearance in North Carolina courts.[17] Therefore, the fact that MKR has not obtained a certificate of authority does not preclude this case from going forward.

[16]    Defendant next argues that, applicable North Carolina law aside, Plaintiffs must demonstrate compliance with Virginia procedural requirements for bringing derivative LLC actions. G.S. § 57C-7-01 provides that the laws of the jurisdiction in which a foreign limited liability company was formed will govern its "internal affairs." In *Bluebird Corp. v. Aubin*, 188 N.C. App. 671 (2008), our court of appeals defined "internal affairs," as

---

[16] Mrs. Davis' Supplemental Br. Supp. Mot. Dismiss ("Def. Supp.") 2 ("Former (now repealed) Chapter 57C of the North Carolina General Statutes, which governed LLCs when this case was first filed, applies."); Pls.' Supplemental Br. Opp. Mrs. Davis' Mot. Dismiss ("Pl. Supp.") 2-4 (distinguishing more rigid requirements for derivative LLC actions in 57D from those that "existed at the time this case was filed").

[17] Both 57D and 57C restrict a "foreign [LLC] transacting business in this State without permission obtained through a certificate of authority" from maintaining a proceeding in North Carolina courts without obtaining a certificate of authority prior to "trial." G.S. §§ 57C-7-03, 57D-7-02. However, the parties have alleged no facts to support any contention that MKR is "transacting business" in North Carolina such that a certificate of authority would be required. Both 57C and 57D specifically exempt "[m]aintaining or defending" any proceeding and owning real or personal property from the definition of "transacting business." G.S. § 57C-7-02; G.S § 57D-7-01.

related to a corporation, to mean "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." *Id.* at 680. Defendant contends that the suit "appears to arise out of the failed proposal to hire an attorney to investigate," and that a decision whether or not to hire legal counsel and whether to file a lawsuit "fall[] squarely within the internal affairs of the LLC."[18] Conversely, Plaintiffs cite to North Carolina case law providing a non-exhaustive list of "internal affairs," such as "selection of directors and officers, adoption of by-laws, issuance of shares, holding of director and shareholder meetings, methods of and requirements for voting, and similar issues relating to the internal organization of the corporation or LLC."[19] Plaintiffs argue that there was no law existing at the time the lawsuit was filed holding that the procedural requirements for derivative LLC lawsuits constitute "internal affairs."[20]

[17]     The Court is not persuaded by Defendant's contention that the substance of the dispute (hiring the attorney) is the relevant inquiry for purposes of determining what constitutes an "internal affair;" rather, the issue is whether the procedural requirements for a member to bring the lawsuit fall into the category of "internal affairs." Unlike selection of directors and officers or issuance of shares, which may be governed by rules and procedures established by the business entity itself, the requirements for bringing a derivative lawsuit are governed by external law, not the entity's internal rules. Further, there is no specific provision in 57C specifying the governing law to be applied for a foreign LLC to bring a derivative lawsuit.[21]

---

[18] Def. Supp. at 2.
[19] Pl. Supp. at 2 (citing *Mancinelli v. Momentum Research, Inc.*, 2012 NCBC 28).
[20] *Id.* at 3.
[21] *Cf.* the new LLC Act, G.S. 57D-8-06 (providing that the laws of the jurisdiction of organization will govern the procedural requirements for bringing a derivative action in North Carolina on behalf of a foreign LLC); G.S. § 55-7-47 (providing that the laws of a state of incorporation will govern the procedural requirements for bringing a derivative action in North Carolina on behalf of a foreign corporation).

[18]     The Court concludes that procedural requirements for derivative LLC actions do not constitute an "internal affair" for purposes of determining applicable law.[22] For purposes of this analysis, the procedural requirements of 57C governs.

<u>Derivative Lawsuit Requirements – Procedure</u>

[19]     Chapter 57C sets forth two basic requirements for a member of an LLC to bring a derivative lawsuit. First, the plaintiff must not have the authority to cause the LLC to sue in its own right. Second, the plaintiff must have been a member of the LLC at the time of the complained-of action or have attained member status pursuant to the operating agreement from a person who was a member at such time, and the plaintiff must be a member at the time that the lawsuit is initiated.[23]

[20]     It is evident to the Court that Plaintiffs have met both of these requirements. Both Plaintiffs have been members of MKR since its inception, and the unanimity requirement of the Operating Agreement precludes Plaintiffs from bringing the action "as MKR" in the absence of Kaye's consent, which has not been given.[24]

[21]     Unlike 57D, 57C does not contain a specific demand requirement for bringing a derivative lawsuit on behalf of an LLC, but instead simply requires that a complaint "allege with particularity the efforts, *if any*, made by the plaintiff to obtain the action the plaintiff desires" from those in control of the LLC. G.S. § 57C-8-01 (emphasis added). The Complaint sets out several actions taken by Plaintiffs that attempted to get Mrs. Davis to

---

[22] This Court has found in at least one other case that the procedures required of a shareholder to bring a derivative suit on behalf of a corporation constitute "internal affairs." Krieger v. Johnson, 2014 NCBC 13 at *21. However, *Krieger* dealt with the requirements for bringing a derivative suit on behalf of a corporation, not an LLC. G.S. § 55-7-47 explicitly dictates that a derivative suit brought in the right of a foreign corporation should be governed by the laws of the jurisdiction of incorporation. There is no such requirement in 57C.
[23] G.S. §57C-8-01.
[24] Compl. ¶¶ 7, 11, 19.C.

cease renting the Property.[25] However, for purposes of this analysis, the relevant inquiry is what Plaintiffs did in an attempt to get <u>MKR</u> to take action, namely bringing this lawsuit to enforce its rights under the Deed as remainderman. In that regard, Plaintiffs have most notably alleged a duly called meeting of all member/managers of MKR on June 28, 2013, at which time Kaye "voted against any action being taken by [MKR] regarding the rental of the [Property]."[26]

[22]     The Court is not persuaded by Defendant's contentions that Plaintiffs are barred from bringing this lawsuit because of the unanimity provision in the MKR Operating Agreement. As discussed below, MKR is a party to the Deed, and the relief sought in this action is appropriate given its status as a remainder beneficiary. Further, 57C explicitly requires that a plaintiff bringing a derivative action not have the authority to force the LLC to sue in its own right. This is the case even if the member is also a manager. *See, e.g.*, *Crouse v. Mineo*, 189 N.C. App. 232 (2008). Plaintiffs have successfully established their right to bring a derivative action on behalf of MKR.[27]

Injury in Fact

[23]     In her brief, Defendant contends that Plaintiffs have not alleged anything more than a hypothetical injury to the Property and, by extension, the remainder interest.[28]

[24]     For purposes of establishing standing, Plaintiff must allege an injury that is "actual or imminent, not conjectural or hypothetical." *See, e.g.*, *Neuse River Found.*, 155 N.C. App. at 114. The extent of the injury alleged in the Complaint is as follows:

---

[25] Compl. ¶ 19.
[26] *Id.* ¶ 19.C.
[27] At the hearing, Defendant's counsel argued that MKR was also required to allege its capacity to sue, pursuant to Rule 9. The Court concludes that this requirement has been met by Plaintiffs' allegations that they have complied with the applicable derivative lawsuit requirements.
[28] Whether Plaintiffs have successfully alleged an injury is a factor to be considered under both Rule 12(b)(1) and Rule 12(b)(6).

a. "[T]he rights of MKR Development as the remainderman of the North Carolina Property have been and will continue to be violated and jeopardized by the use of the North Carolina Property by anyone other than Dorothy Davis as restricted under the terms of the North Carolina Deed."[29]

b. That Defendant has "failed to implement 'rental insurance' so as to protect the North Carolina Property from loss or damage . . . [which] further jeopardizes and puts at risk the interest of MKR Development."[30]

[25]    Ordinarily, the Court would be hard-pressed to conclude that these allegations constitute an "actual or imminent" injury. However, it is also true that the primary relief sought by the Plaintiffs in this action is for a declaration regarding the meaning of the language in the life estate created by the Deed, and an order that Mrs. Davis not be permitted to rent the Property absent explicit written permission from MKR.[31] North Carolina law permits a court to issue a declaratory judgment regarding "rights, status, or legal relations" under a written instrument like a deed, upon a request by "[a]ny person interested." N.C. Gen. Stat. §§ 1-253, 1-254. While our courts have explicitly declined to waive the standing requirement for bringing such an action, "standing" for purposes of bringing a declaratory action will be satisfied if the plaintiff is a "real party in interest," that is, one who will be affected by the outcome of the case. *Sandhill Amusements, Inc. v. Sheriff of Onslow Cnty.*, __ N.C. App. __, 762 S.E.2d 666, 678 (2014) ("Ultimately, plaintiffs in declaratory judgment actions are not required to sustain actual losses in order to make a test case, since that requirement would thwart the remedial purpose of the Declaratory Judgment Act." (internal citations and quotations omitted));

---

[29] Compl. ¶ 17.
[30] *Id.* ¶ 18.
[31] Compl. Prayer for Relief.

*Beachcomber Props. v. Station One, Inc.*, 169 N.C. App. 820, 824 (2005) ("Absent an enforceable contract right, an action for declaratory relief to construe or apply a contract will not lie." (quoting *Terrell v. Lawyers Mut. Liab. Ins. Co.*, 131 N.C. App. 655, 661 (1998))).

[26]     Here, the Complaint alleges that MKR is a party to the Deed and, thus, is a real party in interest for purposes of bringing this lawsuit.

[27]     Based upon the foregoing analysis, the Court has finds and concludes that Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) should be DENIED.

## Rule 12(b)(6)

[28]     A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. "For the purpose of the motion, the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." *Sutton v. Duke*, 277 N.C. 94, 98 (1970). A 12(b)(6) Motion should not be granted unless the plaintiff would not be entitled to relief under any set of facts that could be proven in support of the claim. *Isenhour v. Hutto*, 350 N.C. 601, 604-05 (1999).

[29]     Defendant contends that the Complaint should be dismissed because Plaintiffs have failed to state a claim upon which relief may be granted. In addition to reiterating that Plaintiffs have not alleged an "injury" for purposes of seeking relief in Court, Defendant contends that the Mrs. Davis' actions are clearly permitted by the language of the life estate.

[30]     As discussed *supra*, a real party in interest may seek a declaratory judgment. The only "injury" that must be demonstrated is that a controversy as to the terms at issue exist at the time that the complaint is filed. *See, e.g., Conner v. N.C. Council of State*, 365 N.C. 242, 258 (2011) ("Although the North Carolina Declaratory Judgment Act does not state specifically that an actual controversy between the parties is a jurisdictional

prerequisite to an action thereunder, our case law does impose such a requirement." However, "plaintiffs are not required to allege or prove that a traditional cause of action exists against defendant[s] in order to establish an actual controversy." (internal citations omitted)).

[31]     The parties do not dispute that a controversy existed at the time the Complaint was filed as to whether Mrs. Davis was permitted to enter into a rental contract under the terms of her life estate. A "controversy" has therefore been established for purposes of moving beyond Defendant's Motion to Dismiss pursuant to Rule 12(b)(6).

[32]     The Court also cannot conclude at this stage of the proceeding that the language of the Deed clearly permits Mrs. Davis to rent the property to third parties, such that the Complaint should be dismissed.

[33]     It is true that North Carolina has traditionally disfavored restrictive covenants, and courts have found that any ambiguities restricting the free use of land should be resolved in favor of the least restrictive interpretation. *Stegall v. Hous. Auth. of Charlotte*, 278 N.C. 95, 100-01 (1971).  However, it is also true that North Carolina case law provides that any ambiguities in a deed should be resolved by looking to the surrounding circumstances at the time the deed was created. *Long v. Branham*, 271 N.C. 264, 268 (1967); *Andresen v. E. Realty Co.*, 60 N.C. App. 418, 421 (1982) ("Although there is a general rule of strict construction against limitations on the free use of land in North Carolina, . . . we cannot say as a matter of law that plaintiff could not prevail in this action." (internal quotations and citations omitted)); *Stegall*, 278 N.C. at 100 ("[W]hen the language used [to create the restrictive covenant] is ambiguous it is proper to consider the situation of the parties and the circumstances surrounding their transaction.").

[34]     The Deed does not unambiguously grant Mrs. Davis the authority to rent the Property to third parties, meaning that the Court would need to engage in an analysis of

the parties' intent at the time that the Deed was drafted. Such a factual analysis is inappropriate at this stage in the proceedings. *See Alamance Cnty. Hosp., Inc. v. Neighbors*, 315 N.C. 362, 364-65 (1986).

[35]    Because Plaintiffs have successfully identified a controversy and the Deed language is not unambiguous, the Court concludes that Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) should be DENIED.

THEREFORE, IT IS ORDERED, based upon the foregoing FINDINGS and CONCLUSIONS, that the Motion is DENIED.

This the 21st day of November, 2014.